CHARLES DARRIER, Appellant, *vs.* BERTHA DARRIER, Respondent.

1. *Husband and wife—Conveyance secured by wife from husband's funds— Advancement.*—A conveyance of land which a wife secures to herself in her own name, with her husband's funds, will be presumed to be an advancement for her benefit. But whether such be the fact is a question of intention, and evidence on that point is admissible especially where the husband denies such intention. And *semble,* that fraud, in any form, in obtaining the title against his consent, will itself rebut the presumption.

2. *Practice, civil—Bill of Exceptions—How amended—May be by Supreme Court.* —A bill of exceptions is, when duly filed, a part of the record, and may, where there is matter to amend by, be amended on motion, to the same extent and subject to the same restrictions as any other portion of the record. And the Supreme Court will, on a proper showing, make such amendment without returning the bill to the lower court merely for that purpose.

3. *Husband and Wife—Competent witnesses, where opposing parties—Agency of wife.*—In suit by the husband against the wife, to divest the latter of title to land, the parties are competent witnesses against each other in regard to communications between them. And the agency of the wife having been satisfactorily established, the same rules of evidence will prevail as between any other principal and agent.

4. *Husband and wife, confidential communications between.*—A letter from a husband to his wife, directing her to purchase certain land for him, may be introduced in evidence, and does not fall within the rule which forbids the disclosure of confidential communications.

5. *Supreme Court—Equitable relief by.*—The Supreme Court may, at its pleasure, grant that relief that should have been accorded by the trial court.

*Appeal from Jefferson Circuit Court.*

*L. Gottschalk, W. C. Kueffner, with Joseph J. Williams,* for Appellant.

I. The court should have admitted the plaintiff's testimony with regard to the instructions sent by him to his wife as to how the title to the land was to be taken, and should also have admitted the letter from the plaintiff to the defendant on the same subject.

The text books, laying down the rule as to the exclusion of evidence of confidential communications between husband and wife, only refer to cases where the communication is to be proven by either against the party making it. (1 Greenl. Ev., 12 Ed., ch. 13, p. 286, § 254; ch. 2, p. 390, § 337; 2 Stark. Ev., 7 Am. from 3 Eng. Ed., part 1, 551; Cornell vs. Vanartsdalen, 4 Penn. St., 374; Cassin vs. Delaney, 38 N. Y., 178.)

II. The plaintiff was entitled to a decree upon the answer of the defendant and the evidence in the case. The law is well settled that when real estate is bought with the money of one person, but the title is taken in the name of another, a trust results in favor of the party advancing the purchase money. (Johnson vs. Quarles, 46 Mo., 426; Kelly vs. Johnson, 28 Mo., 249; Perry on Tr., ch. 5, p. 97, § 125.)

The rule that where a father or husband takes the title to land, purchased with his money, in the name of a wife or child, the presumption of a resulting trust is rebutted in favor of an intended advancement or settlement, applies only when the father or husband himself procures the deed to be made in favor of the wife or child; but when the nominal purchaser procures the conveyance, it must in addition affirmatively appear that he acted, when he took the title in his name, under the authority of the person advancing the purchase money. Otherwise, a trust will result in favor of the latter. (Peer vs. Peer, 3 Stock., 345.)

And even when the husband himself directs the title to be taken in the name of his wife, it may still be shown that no settlement was intended. And for this purpose, evidence may be received of cotemporaneous acts and facts, as well as of acts and facts so immediately after the purchase as to be fairly considered a part of the transaction. (Perry on Tr., ch. 5, p. 119, § 147.)

III. The answer of the defendant herself shows that no settlement was intended. According to her own statement the conveyance was not made as a settlement and provision absolutely, but only to become a settlement in the event of the plaintiff's death during the war.

The war being over, the husband is entitled to a re-conveyance. In a somewhat similar case, it has been held that a trust resulted in favor of the husband. (Cotton vs. Wood, 25 Ia., 45.)

IV. The court should have permitted an amendment of the bill of exceptions. A court has authority, as well after as before an appeal, to amend its records according to the truth

so that they should accurately express the history of the proceedings which actually occurred prior to the appeal. (De-Kalb County vs. Nixon, 44 Mo., 342; Pockman vs. Meatt, 49 Mo., 348; 1 Tidd's Prac., 9 Ed., ch. 29, pp. 712, 713; side pp. 713–14.) And this rule applies as well to record entries as to papers filed of record, and it applies to bills of exception, they being part of the record.

*Henry F. Ahlvers*, for Respondent.

I. This being an action by a husband against his wife, to obtain the title to land which is in the name of the wife, is not based on the doctrine of a resulting trust in favor of a person who furnishes the purchase money. (2 St. Eq. Juris., §§ 1202–4, pp. 420–22, 8 Ed.)

II. The testimony of appellant, that he had written to respondent to have the title made in his name, was properly excluded, for he testified to a communication from him to his wife. (Moore vs. Moore, 51 Mo., 118; Buck vs. Ashbrook, 51 Mo., 539; Berlin vs. Berlin, 52 Mo., 151.)

III. The motion to amend the bill of exceptions by inserting a certain letter therein, was properly overruled. Appellant should have proven, in support of such motion, that the letter was not copied in the original bill by mistake, oversight of the attorney or clerk, or the like.

IV. The judgment overruling said motion, has no business in this court. It came here neither by writ of error, nor by appeal, nor in any other way, except that appellant filed a transcript thereof here.

SHERWOOD, Judge, delivered the opinion of the court.

This case presents the anomalous feature of a husband seeking to divest his wife of the title to certain school lands, which formerly belonged to school township number six, in Jefferson county, charging in his petition that, while he was in the United States army, the defendant, with money which he had furnished, in contravention of her express promise and of his explicit instructions to take the title in his name, had fraudu-

lently succeeded, by means of a deed from one Herman Darrier, and of certain patents issued by the State of Missouri, in taking the title in her own name; which fraudulent conduct, plaintiff never discovered until upon his return home from the army, in the year 1865.

The answer denied all the material allegations of the petition, and, in addition thereto, claimed that it was at the special instance and request of plaintiff, who, being engaged in active service, and aware of the consequent uncertainty of his life, and desirous, as he frequently said, to make provision for his wife in the event of his death while a soldier, that the title to the land was taken in her name, of which fact he was cognizant for a number of years; but raised no objection and made no complaint, until shortly before suit brought. A difficulty having arisen between plaintiff and defendant, he therefore desired to divest her of title. The statute of limitations was also pleaded. A reply was filed, denying the chief averments of the answer.

The testimony of the defendant establishes with conclusive clearness, that it was the funds of the plaintiff, viz: $300 in bank, and the proceeds of the sale of five shares of stock in the Franklin Insurance Company, as well as some other money, sent by plaintiff to her while he was in the army, with which the land was purchased. It is true, she also testifies that during the absence of her husband, she earned some money by her own labor; but she does not pretend that any portion of her earnings was applied towards paying for the land; and in addition to this, she admits she was, at the time of her marriage to plaintiff, entirely destitute of means. In support of the allegations of her answer, she testifies that she received a letter from her husband, authorizing her to arrange the business about the land and about paying for it, and that this was *the only letter on the subject she had ever received from* the plaintiff. She gives no date to this letter (which it seems was lost) but says she took it to St. Louis to Dauestraw, and he came down with her to Jefferson county to arrange the business, and Dauestraw, who corroborates her

15—VOL. LVIII.

testimony with his own, says the letter was received in the early part of May or June, 1862, or about that time, and authorized defendant to buy the land, when it should be sold by the sheriff of Jefferson county, and take the conveyance in her own name; that witness went to Hillsboro with defendant, at her request, to assist her in effecting this purpose, and arranged matters in accordance with the instructions contained in the letter. He says further: "a deed of trust or claim of some kind was released; we paid the sheriff a certain amount of money, and the land was not sold on that day. I arranged with the sheriff that the property should be transferred to Mrs. Darrier in her name, and left her there to have the papers drawn up and the arrangement completed. This was some twelve years ago, and I do not clearly recollect the amount of money or the nature of the claim to be satisfied." The defendant also testified that she was living in St. Louis, in the fall of 1862, and winter and spring of 1863; that plaintiff was at home in St. Louis, from October, 1862, till March, 1, 1863, as a recruiting officer, and after returning to his regiment in the South, returned again to, and remained with her at home, for two weeks in the fall of 1863; that she informed him of having taken the title to the land in her own name, and he said "all right." *When* she so informed him is not stated, nor is it stated where she was living at the time.

She further stated that the patents for the land were sent to the clerk of the court at Hillsboro, and after being recorded were brought by the clerk to her in the *winter* of 1863, in St. Louis, where she was still living, and that she had never seen them until that time.

Where the purchaser of land pays the purchase money and takes the title in the name of a stranger, the presumption at once arises that the benefits accruing from the purchase are to go to him who paid the consideration. But a different rule prevails and a different presumption springs into being where, under similar circumstances, the conveyance is taken in the name of a wife or child; there, the obligation under

which the purchaser rests to provide for the one in whose name the title is taken, will countervail any inference that a resulting trust was intended in favor of the actual purchaser. (Perry on Trusts, § 143; 2 Sto. Eq. Jur., § 1201 and cases cited.)

Looking at the case before us, then, from that point of view alone, it may be assumed as a basis at least of further remark, that the defendant had, at the conclusion of the evidence offered in her behalf, made out, *prima facie*, that an advancement must be presumed; and therefore, that the conveyances which she had secured in her own name should be regarded in that light. Whether the purchase, however, in the case at bar, was designed to be consummated in the manner claimed by the defendant, was a question of pure intention; and the way was consequently open for the admission of evidence to establish the design the plaintiff had in contemplation at the time of furnishing the purchase money. (Perry on Trusts, § 147; Hill on Trustees, 97; Livingston, vs. Livingstone, 2 Johns. Ch., 540; Wilton vs. Divine, 20 Barb., 9; Harder vs. Harder, 2 Sandf. Ch., 17.)

This rule, as to the admissibility of evidence showing intention, would hold, as shown by the above cited authorities, even where the taking of the title in the name of the nominal purchaser *was authorized* by the furnisher of the money; and, *a fortiori*, evidence should be admissible where the authority, as in the present instance, is placed in doubt by the owner of the fund with which the purchase was effected denying the fact of such authorization. And it has been held that if fraud in any form characterizes the obtaining of the title by a wife or child, against the consent of the husband or father who pays the purchase money, that this of *itself* will rebut the presumption of an advancement, and raise a trust in behalf of the husband or father. (Perry on Trusts, § 148; Peer vs. Peer, 3 Stock., 432; 13 Ia, 368.) The substance of the evidence offered by the plaintiff in support of his denial in the particular referred to, and in support of the allegations of his petition will now be briefly stated.

The testimony of Uhlmann showed that plaintiff was possessed of some means before his marriage, in 1856, and occasionally received drafts from Europe, and one time in that year had loaned witness $200.

The testimony of Schiffmann was to the effect that plaintiff was the possessor of a small amount of means before his marriage; that plaintiff frequently sent his wife letters and money during the war, and that witness had seen, though he did not read, one of these letters, which accompanied a package of $1,000 sent by plaintiff to defendant in the latter part of 1862. The plaintiff testified that in May, 1861, he enlisted in the army, was commissioned lieutenant shortly after his enlistment, and continued in the army till the close of the war, in 1865; that he sent defendant money to pay for the land, writing to her at the same time to have the title taken in his name, and that he wrote more than once to that effect; that when at Camp Hoffman, Arkansas, he wrote a letter to defendant, and sent it to her by mail to Jefferson county, Missouri, on the day it bears date, and on his coming home, in 1865, he found this letter in defendant's possession, among other papers relating to the land. The letter referred to bears date Camp Hoffman, Ark., April 5, 1862; is addressed to defendant; informs her that plaintiff has sent her $400 through Schiffmann, and requests her to buy the land of Herman Darrier; pay all the debts due on it, *so that plaintiff could get a perfect title in his own name.* The letter also refers to the fact of Herman Darrier having been informed on the subject by plaintiff; that, in case a sufficient amount of money had not been already furnished by plaintiff, he would furnish the residue in two months; but the belief is expressed that as "Kuene has paid," defendant would be able to settle the whole matter then. An estimate is then made as to the amount Herman Darrier owes on the land; and that portion of the letter, referring to the business, concludes with an earnest request that defendant should give it her special attention.

The plaintiff also testified that he never, at any time, authorized the defendant to have the land conveyed to herself, nor did he know that it had been thus conveyed, until after his return home, in the year 1865, but supposed, up to that time, that the patent and title papers were in his name; that, upon ascertaining that the land had been conveyed to his wife, he was dissatisfied and consulted a lawyer, but the fee asked was so large that he had deferred the matter until the present suit; and he further testified that since his return home, in 1865, he had lived with his wife on the land in dispute as his home.

The other evidence offered on behalf of plaintiff consisted of a deed whose expressed consideration was one dollar, and date April 7, 1862, from Herman Darrier to defendant, conveying to her the land in controversy, and authorizing her to receive the patents therefor in her own name; certain patents for the same land, dated December 6, 1862, recorded April 20, 1863, from the State of Missouri to defendant as assignee of Herman Darrier; certain receipts given to the defendant by the treasurer of Jefferson county dated respectively, July 7, November 6 and November 17, 1862, for money paid school township No. 6; a deed of trust dated July 28, 1860, executed by Herman Darrier, conveying the land in question, to secure a note due the plaintiff for $500; a deed from the sheriff of Jefferson county, dated January 15, 1862, but acknowledged December 15, of that year, purporting to convey the land in suit to plaintiff, under and by virtue of a power contained in a deed of trust dated July 28, 1860, executed by Herman Darrier to the former sheriff to secure Charles Darrier in the payment of a promissory note described in the deed of trust. A notice and a letter accompanied the deed of the sheriff, and were attached thereto. The letter is from the plaintiff to the sheriff of Jefferson county, is dated at St. Louis, Nov. 10, 1862; states that plaintiff is the holder of a note, for $500, due in twelve months, dated July 28, 1860, to secure which Herman Darrier had executed his deed of trust of that date, and requests the sheriff to sell the land,

cattle, etc., described in the deed, and inform the plaintiff by a letter addressed to him at St. Louis, of the day of sale. The notice is in usual form, dated Nov. 16, 1862; refers to the deed of trust mentioned in plaintiff's letter; describes the land sued for, and also certain personal property, and designates the 13th day of December, 1862, as the day of sale. Certain tax receipts, showing the payment by plaintiff of the taxes on the land in dispute, marked the close of his case.

The evidence offered on behalf of the plaintiff must be regarded as far more satisfactory than that offered on the part of the defendant; and this is so for several reasons:

1. The letter purporting to have been written at Camp Hoffman, Arkansas, April 5, 1862, by plaintiff to defendant, was offered in evidence, was open to inspection, so that its genuineness and the marks of its authenticity were capable of ocular demonstration; and the very fact of its existence and the nature of its contents did not depend upon the feeble and imperfect impressions produced upon "slippery memory," as was the case in regard to the letter testified to by defendant and Dauestraw.

2. The plaintiff states that the letter of April 5, 1862, was sent by mail to defendant, in Jefferson county; and that she lived there about that time, is apparently true, because the plaintiff would scarcely have authorized his wife to proceed to a distance to attend to a business matter of the kind mentioned in the letter; and besides, Herman Darrier (who is probably a relative), is seemingly referred to as one at no great distance; and the defendant herself, says, that she took the *only* letter which she ever received on the subject, *to St. Louis* to Dauestraw, and he says the letter was received "the latter part of May or June, 1862, or about that time," and that he went with her down to Hillsboro, to arrange the business for her, and left her there to have it completed. That she was there "about that time" is shown by the receipt dated July 7, 1862, given to her by the treasurer of Jefferson county, showing a personal payment by her of $550.

3. If credence is to be given to defendant's statement that the letter testified to by herself and Dauestraw was the *only* one which the plaintiff wrote her in relation to purchasing the farm; and Dauestraw is right as to the time of that letter's reception, viz., "the latter part of May or June, 1862, or about that time," then there is no refuge from this result; that, without any authority whatever from plaintiff, she induced Herman Darrier to convey her the land, and authorize her to receive the patents therefor on the 7th of April, 1862, by his deed of that date; and if she obtained that deed without authority, such unauthorized act, being established, would afford very strong ground for the presumption that she was actuated by the same motive when securing the issuance of the patents to herself.

4. It is hardly within the range of probability—and probability is the chief corner-stone of evidence—that the plaintiff would, by his letter of April 5, 1862, authorize the purchase of the farm in *his own name;* then, by another letter, written shortly thereafter, direct the defendant to take the title in *her name;* and then, in a few months subsequently, proceed to have the land sold under the deed of trust, and take the title arising from such sale to *himself.* And that he did thus take the title, the product of the sale, is shown in a manner not to be gainsayed, by the deed of the sheriff to him. Nor is there any importance to be attached to the fact that such deed is dated January 15, when the date should be *December* 15, as the accompanying papers show in an evident manner that the misdating of the deed was a mere clerical error; and, therefore, it will not be assumed that the deed was made almost a year before the sale therein mentioned took place.

5. Motive has been not inaptly styled " the mainspring of human action." No conceivable motive could have prompted the plaintiff to play fast and loose; to act as he evidently did act, if what defendant testifies in relation to the alleged lost letters, and if the plaintiff's letters to the sheriff, and the recitals of the deed of the latter to the plaintiff, are all to be

taken as true. For, at. the very time when the plaintiff was taking the necessary steps to foreclose, by sale of the school land, Herman Darrier's equity of redemption therein, defendant had not only acquired that, in the previous April, but had her plans laid for the issuance of the patents to herself; and which were so issued but one short week before the sale took place, at which plaintiff bought. And in regard to Dauestraw's impressions in reference to the alleged lost letters, they are, as he himself admits, very vague; and no doubt he was imposed on at the time, and the impressions made on his mind were for the most part false ones, produced by conversations with the defendant, and not by the contents of any letter which he read. And the craft which would prompt the obtaining of the deed from Herman Darrier would doubtless be equal to such an occasion.

6. The plaintiff's testimony is positive, that he knew nothing of the defendant having acquired the title, until his return home at the close of the war in 1865; but the defendant does not fix any date at which she gave him that information. It does not appear that he returned to this State but *twice* during the war's continuance, even from defendant's testimony—once in October, 1862, when he remained until March, 1, 1863, and the second time in the *fall* of 1863, remaining two weeks. She also states that the clerk brought the recorded patents to her in St. Louis in the *winter* of 1863, and that she had never seen them until thus brought. So that if she intends to be understood as having informed her husband in respect to the matter, in the winter of 1862–3, this information was *premature*, as the patents were not issued till December 6, 1862, and not recorded until April, 20, 1863; and she never saw them, according to her own story, before the *winter* of 1863, and this was *after* her husband's last departure to his regiment.

7. But an inconsistency perhaps more glaring than any in the defendant's narrative is this: If her husband had really authorized her to secure the title of the land to herself, no necessity could possibly have arisen to inform him of a fact with which he was already perfectly familiar.

For these reasons there is no "shape of likelihood" in the defendant's version of the affair. Again, were we to lay aside all legitimate deductions from the evidence, it is by no means free from doubt that defendant has not admitted sufficient facts in her answer to warrant the relief prayed for by plaintiff; because it plainly appears from the answer itself, that she was permitted to take the title for only a *temporary* purpose, i. e., for making provision for her in the event of the "*unexpected death of plaintiff while a soldier*," & as the necessity that gave rise to such conveyance has ceased; and as such admission rebuts the presumption of an intended advancement, it would seem, should we desire to follow the rulings in Cotton vs. Wood, (25 Iowa, 44) that plaintiff ought to prevail in this suit, regardless of the very convincing evidence which he has adduced. But regarding that evidence as well nigh conclusive in his favor, there exists no occasion for a decided expression of opinion on the point suggested; and therefore it will be left open to further and future examination.

It will have been observed that I have treated plaintiff's letter of April 5th, 1862, as forming a part of the record, and so it ought to be regarded. The original bill of exceptions, filed at a former term, refers to it in the most unequivocal terms, thus: "Plaintiff also then offered in evidence a letter in the German language with a translation of the same into the English language, signed by himself, dated Camp Hoffman, Arkansas, April 5, 1862, addressed to the defendant," etc. And, on motion made to amend the original bill of exceptions, by inserting the words, "of which the following is a copy," it was admitted by defendant's counsel, that this letter was actually offered in evidence, was placed, and still remains with the papers and files of the cause in the clerk's office. A bill of exceptions, when duly filed, constitutes a part of the record; and is consequently subject to the operation, in appropriate cases, of amendatory motions to the same extent and under the same restrictions as any other portion of the record; and this case is deemed one of that char-

acter, as there was ample matter to amend by. (Wallahan vs. The People, 40 Ill., 103 ; DeKalb Co. vs. Hixon, 44 Mo., 342; Pockman vs. Meatt, 49 Mo., 345 ; 1 Tidd's Pr. 714.) The motion made by plaintiff should therefore have prevailed ; and without going through the bare and meaningless formality of sending the case back for that purpose, we have treated the letter as incorporated in the original bill.

But it is urged here, as it was with success in the lower court, that neither the letter nor plaintiff's testimony in regard to it, were admissible. In reference to this letter, it is quite sufficient to observe, that had the same matter been contained in *a power of attorney*, no one would doubt its admissibility, or regard it as a confidential communication between husband and wife. How then, can that admissibility be affected, in the present instance, merely because the instructions sent in the letter do not put on the formalities or assume the shape of a legal instrument. And if the *letter* is held not within the rule precluding the disclosure of confidential communications, surely the *testimony* of the plaintiff respecting that letter could not be deemed inadmissible. Besides, this court has repeatedly held that husband and wife are, as opposing parties, competent witnesses (Moore vs Moore, 51 Mo., 118; Berlin vs. Berlin, 52 Mo., 151) ; and the agency of the wife having been satisfactorily established the same rules of evidence would prevail as between any other principal and his agent.

In conclusion : This suit was brought August 5, 1873 ; there has been no adverse possession, nor adverse claim ; and according to plaintiff's testimony, which is undisputed on this point, he was unaware of the title being taken, otherwise than as he directed, until 1865. Under such circumstances, it is very clear the statute of limitations would not run.

The judgment is reversed, and this court, proceeding to accord to plaintiff that relief which he should have received at the hands of the trial court, an appropriate decree will be entered here, divesting defendant of all title in the premises, and vesting the same in the plaintiff. All the other judges concur.