JOHN W. NORTH, Respondent, v. JOHN B. STEVENSON, Appellant.

St. Louis Court of Appeals, May 22, 1897.

1. **Receipt, Suit for Cancellation and Recovery of Amount of:** FRAUD: EVIDENCE. In a suit for the recovery of a certain sum of money expended by plaintiff on defendant's behalf, and for the cancellation of a receipt in full therefor, executed by plaintiff, on the alleged ground of fraud in its procurement, where the facts upon which plaintiff based his right to set aside the receipt had no tendency to show that he had no contracting mind at the time he gave it, nor to prove that he signed it supposing he was signing a different paper,—*Held:* That the contract, evidenced by such receipt, was not void, but merely voidable, and, to set it aside, it was necessary it should appear that the amount received thereunder had been returned or tendered defendant. (*Och v. R'y*, 130 Mo. 27.)

2. **Remanding Cause for Amendment in Conformity With Rule.** But held: That, as appellant may have refused to accept a return of the consideration of such receipt, or may-have consented to its application to some other indebtedness existing between himself and respondent, the cause should be remanded to permit respondent to file an amended petition tendering a return in conformity with the rule stated *supra*.

*Appeal from the McDonald Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED; Judge BLAND concurring, Judge BIGGS dissenting.

*Edw. J. White* for appellant.

The cause of action stated in the first count of respondent's petition, being in equity, this court will review the entire evidence thereunder, make its own findings of fact, and practically try the case under this count *de novo*. *Blount v. Spratt*, 113 Mo. 48; *Finley v. Schlueter*, 54 Mo. App. 455.

The case of fraud should be clearly and strongly proven, by respondent, before the court should interfere to grant the relief sought. Bisp. Prac. Eq. [4 Ed.], sec. 189, p. 243, and citations; *Vashage v. Vashage*, 45 Mo. App. 172.

It is elementary that the pretended representation of appellant that the note in question "was not paid and would not be paid," to afford a basis for the cancellation of the compromise agreement, must have been relied on by respondent. Bisp. Prac. Eq. [4 Ed.], sec. 215, p. 272. See, also, Kerr on Fraud and Mis. 75; *Winter's App.*, 11 P. F. Sm. 387; *Hough v. Richardson*, 3 Story, 659; *Parker v. Hays;* 39 N. J. Eq. 469; *Veasey v. Daton*, 3 Allen, 380; *Brown v. Leach*, 107 Mass. 364; *Clark v. Everhart*, 13 P. F. Sm. 347; *Wright v. Gully*, 28 Ind. 475.

The court erred in overruling appellant's demurrer to the first count of the petition. 1 Beach, Mod. Law Con., sec. 794, p. 973; Bisp. Prac. Eq. [4 Ed.], sec. 43, p. 62, and citations. See, also, *Billings v. Aspen, etc.*, 52 Fed. Rep. 250; *Robinson v. Siple*, 129 Mo. 208; *Och v. R'y Co.*, 130 *Id*. 27; *Carson v. Smith*, 133 *Id*. at 614; *Dwyer v. R'y*, 66 Mo. App. 335; *Retzer v. Packing Co.*, 58 *Id*. 264.

*Geyer & Murray, J. W. Brunk,* and *Hugh Dabbs* for respondent.

The statements and representations concerning appellant's financial condition were representations of facts peculiarly within the knowledge of appellant, and respondent, not knowing them to be false at the time, had a right to rely on them, and having acted on such representations, the same being false, his right to relief is clear. Pom. Eq. Juris., secs. 891, 892; *Cottrill v. Krum*, 100 Mo. 397, 404, 405; Kerr on Fraud, pp. 80–82.

"It is no excuse, nor does it lie in the mouth of appellant to aver, that respondent might have discovered the wrong, and prevented its accomplishment by watchfulness or inquiry, for this would be equivalent to saying: 'You trusted me, therefore I had a right to betray you.'" *Pomeroy v. Benton*, 57 Mo. 531; *Cottrill v. Krum, supra; Wannell v. Kem*, 57 Mo. 478; *Gottschalk v. Kircher*, 109 *Id*. 170; 7 Am. and Eng. Ency. Law, 732, 756, and notes.

If a party intentionally misrepresents a material fact, or produces a false impression by words or acts, in order to mislead or to obtain an undue advantage, it is a case of manifest fraud. Story, Eq. Juris., sec. 192; Big. on Fraud, pp. 527, 528; Pom. Eq. Juris., secs. 891, 892; Kent's Comm. 482; *McAdams v. Cates*, 24 Mo. 223; *Wannell v. Kem, supra; Gottschalk v. Kirchner, supra*.

The burden is on appellant of removing the presumption that respondent relied and acted on his statements. Pom. Eq. Juris., sec. 891, and citations. See, also, *Rawlins v. Rawlins*, 109 Mo. 563; *Barlow v. Elliott*, 56 Mo. App. 374.

The attitude of appellant from the time the receipt was obtained from respondent, and his subsequent conduct, show conclusively that a tender by respondent would have been useless in this case, and in such case tender is not required. *Girard v. Car Wheel Co.*, 123 Mo. 371; *Westlake v. St. Louis*, 77 *Id*. 47; Big. on Fraud (1888), p. 424; *Deichman v. Deichman*, 49 Mo. 107. See, also, *Girard v. Car Wheel Co.*, 46 Mo. App. 79; 109 Ill. 120.

If this court should decide tender necessary in this case under the ruling in *Och v. R'y*, 130 Mo. 37, and *Dwyer v. R'y*, 66 Mo. App. 335, it should reverse and remand for new trial, as these cases expressly hold that

the plaintiff could amend on proper terms. *Och v. R'y, supra,* pp. 48, 49; *Dwyer v. R'y, supra,* 341.

APPELLANT'S REPLY.

The record clearly shows that the judgment was recovered on a theory on which no action at all was maintainable, and where this is true the appellate court will reverse the judgment, without remanding the cause. Finkelnburg's Mo. App. Prac., pp. 95, 96; *Quay v. Lucas,* 25 Mo. App. 4; *Jenkins v. McCoy,* 50 Mo. 348; *McGee v. Larimore, Id.* 425.

BOND, J.—The first count of the petition alleges that in 1893 the defendant and others sold the Kansas City, Fort Smith & Southern Railway to the Missouri Coal and Construction Company; that as a part of said bargain defendant agreed with the purchaser to perfect the title to the right of way of said railway in Jasper, Newton and McDonald counties, Missouri, and in Benton county, Arkansas; that in May, 1893, defendant employed plaintiff, who is an attorney, to perform these services, agreeing to pay him well for such work; that in the discharge of his duties in this employment plaintiff devoted the whole of 1893 and that part of 1894 ending February 28, giving almost his entire time to said matters, and paid out on defendant's behalf large sums of money, amounting to $1,255; that by deceit and fraud defendant procured from plaintiff a receipt in full for all of said sum, except $304.85 (expended by plaintiff) in consideration of a payment to plaintiff of only $250. A cancellation of this receipt is asked.

The second count of the petition asked judgment for the $1,255.

The third count prays judgment for the $304.85.

The answer denies that defendant individually employed plaintiff, and avers that whatever employ-

ment was had was made by defendant in his capacity as president of the railway. It avers further that plaintiff has no cause of action against defendant individually. It then denies the services rendered by plaintiff were worth the amount claimed, and sets up the above mentioned receipt given by plaintiff, as a complete bar to his recovery. The reply states that defendant never disclosed the agency claimed in his answer when plaintiff was employed, but assumed to act in that matter in his own behalf. Plaintiff elected to try first the equitable count in his petition. The court found the issues on that count in favor of plaintiff and decreed a cancellation of the receipt. Thereafter the second and third counts were submitted to a jury, and a verdict rendered in plaintiff's favor on both. Defendant appealed.

It is conceded in the reply brief filed by appellant, that the judgment on the third count should be affirmed. The only question, therefore,

RECEIPT in full: suit for cancellation of: fraud: evidence.

which remains is as to the correctness of the finding on the first and second counts.

The matters for which a recovery is sought in the second count were embraced in the receipt sought to be cancelled in the first count. If, therefore, the court erred, under this record, in decreeing a cancellation of that receipt, the judgment on these counts can not stand. The facts upon which plaintiff bases his right to set aside the receipt executed by him do not tend to show that he had no contracting mind at the time he gave the receipt, nor do they tend to prove that he signed it when he supposed he was signing a different paper or instrument. Therefore under the rule laid down by a majority of the supreme court the contract evidenced by such receipt was merely voidable, not void, and to set it aside it was essential that a suit in equity should be brought

North v. Stevenson.

for that purpose, in which it should appear that the amount received under the receipt had been returned or tendered the defendant. *Och v. Railway*, 130 Mo. 27. As there was no evidence in this case of such a return or tender of the consideration, the decree of the court cancelling the receipt can not be sustained under the authority of the case last cited. This necessitates a reversal of the judgment on the first and second counts. Respondent insists that the cause should be remanded, in order to permit an amendment of his cause of action on the first count in con-

REMANDING cause for amendment in conformity with rule.

formity with this rule. Appellant objects to this on the ground that the respondent's testimony disclosed he did not tender the return of the consideration of said receipt. It does not follow that appellant may not have refused to accept a return, or that appellant may not have consented to the application of said sum to some other indebtedness existing between himself and respondent. Moreover respondent may file an amended petition tendering a return of the consideration. *Cleary v. Mun. Electric Light Co.*, 19 N. Y. Supp. 951. The judgment of the lower court on the third count is affirmed. Its judgment on the first and second counts is reversed and the cause remanded.

Judge BLAND concurs; Judge BIGGS dissents.

BIGGS, J.—(*dissenting*).—I agree that the judgment on the third count should be affirmed, and I also agree that the decree setting aside the receipt ought to be reversed, but I can see no reason for remanding that branch of the case. I place my concurrence in the reversal upon the ground that the averment of fraud in procuring the receipt is not supported by a preponderance of the evidence. The law encourages settlements and compromises of doubtful or disputed

claims, and when once entered into the courts will not set them aside, unless fraud in their procurement is shown by the most satisfactory proof. This is the language of all of the books.

No attempt is made in the opinion toward a discussion of the evidence touching the right of plaintiff to equitable relief. Judge Bland is of the opinion (as I gather from his memorandum in the case) that the weight of the evidence is against the plaintiff as to the allegation of fraud. The views of my brother Bond on the subject have not been communicated to me. If the plaintiff has failed on the main and all important question, I can see no reason for remanding the case merely to give him an opportunity of making a tender. I feel disposed to discuss the facts briefly. In January, 1892, the defendant and several business associates bought the Kansas City, Ft. Smith & Southern Railway, a line of road then in operation from Joplin to Sulphur Springs in the state of Arkansas. Prior to that time the plaintiff had been acting as the local attorney of the road in procuring deeds for right of way. The defendant was elected president of the railroad company under the new management, and the plaintiff was continued in his position as local attorney. In January, 1893, the defendant and his associates sold the road to the Missouri Coal and Construction Company, a corporation, that had previously constructed a line of railroad from Joplin to Kansas City, and after the purchase the two roads were operated by the Kansas City, Pittsburg & Gulf Railway Company. After the sale the defendant acted as president of the new company and remained in the active management of the road, until the month of July following. The plaintiff was continued in his position by the new company. He claims that he resigned his position on the third

day of May, 1893, and that thereupon the defendant employed him to adjust all unfinished matters pertaining to the right of way of the road. The defendant's contention is that whatever plaintiff may have done after May 3, was as the attorney or employee of the new company, and that whatever services he thereafter performed was as the employee of that company, and that the defendant was under no obligation to pay him therefor. By way of settlement or compromise of all claims against defendant on account of these services the latter paid to plaintiff $250, for which the receipt in question was given. Prior to this settlement the plaintiff had instituted a suit against the defendant in Kansas City for the same services, and failing to get service the action was dismissed. Soon after the plaintiff mailed to the defendant the following letter.

"NEOSHO, Mo., June 11, 1894.

"*John B. Stevenson, Jr., Esq.,*
        "*Philadelphia, Penn.*

"MY DEAR SIR:—I write you at this time to say that the suit which I hastily brought against you at Kansas City has been dismissed by me. You remember that I had frequently complained to you of my health which has been giving away for some time, and I have determined now to accept only such business as can be attended to at my home in Neosho. I am not now employed or retained in any business against you, either by railroad company, Missouri Coal & Construction Co., or anyone else. Appreciating your kindness to me in getting that $1,000 from Colonel Bush, and your other many acts of kindness in the past, *I am now prepared to say that if you can bring about an equitable settlement, I can and will agree not to accept any employment against you or your associates and that whatever knowledge I may have of the affairs of the company, or any matters in any way growing out of it, shall be used*

*by me only for your good and the protection of your inter-est.* I do not ask for employment in your business, only a settlement of the past business. It will be a great inconvenience to me if not settled by the time named.

"If you accept this olive branch now offered by me and would like to see me, you may rest assured of a satisfactory interview.

"Hoping you will favor me with an answer at your earliest convenience, and that you will kindly overlook the mistakes of the past, I am,

"Very obediently yours,

"JOHN W. NORTH."

The italics are mine. Acting on this letter the defendant telegraphed the plaintiff at Neosho to meet him at Joplin on the morning of the eighteenth of July, 1894. They met according to the arrangement, but failed to come to any agreement. In the afternoon the defendant went to Sulphur Springs, Arkansas. The plaintiff accompanied him as his guest. After their arrival at Sulphur Springs, they finally agreed on a settlement of plaintiff's claim for $250. The defendant gave his check for the amount and the plaintiff executed to defendant his receipt in full of all demands growing out of the controversy.

The allegation of fraud in the petition is that during the negotiations the defendant repeatedly said, "I have fixed myself; I have shaped my affairs and you can sue me and pursue me for twenty years, and never make a dollar out of me in the world," by which the plaintiff was led to believe and did believe that the defendant was insolvent, whereas in truth and in fact he was perfectly solvent. It is then averred that the plaintiff accepted the sum of money offered and executed the receipt under the belief that nothing could be collected from defendant by legal process. On the other hand

the defendant asserted that the settlement was fairly made; that he made no representations as to his solvency or insolvency; that he really owed the plaintiff nothing, and that his object in paying the money was to buy his peace. The plaintiff and defendant were the only witnesses to the settlement. Their conversations were private. The plaintiff was examined at great length about what was said and done. The following extracts will show the substance of his testimony. "The defendant said 'I have fixed myself' and he kept repeating this, 'I have fixed myself.' Not once, not twice, but he kept on saying this over to me. Finally he said, 'I will tell you what I will do. I will give you two hundred and fifty dollars for your services, * * * but I have fixed myself and you can not get a dollar out of me. * * * You can sue me and pursue me for twenty years and not get a dollar out of me.' " Continuing the plaintiff said: "I was so startled, I was so stunned, that I did not know what to say. I said, Mr. Stevenson this is a strange way of doing business." The plaintiff then testified that by invitation he went with defendant to Sulphur Springs, and that about 9 o'clock that night the settlement was made and the receipt given. The defendant denied emphatically that he said anything to the plaintiff as to his financial condition. He testified further that at the time the settlement was made the Missouri Coal and Construction Company owed him $500,000, which was amply secured; that he had just received $250,000 in cash from the construction company; that he owned real estate in Sulphur Springs of the value of $30,000 or $40,000; that he owned real estate in McDonald county, Missouri, and in the state of Pennsylvania of great value, all of which was well known to the plaintiff at the time the settlement was made. Now, the burden was on the plaintiff to show fraud in the procure-

North v. Stevenson.

ment of the receipt. He did not discharge the burden, so far as the positive evidence goes. That is evenly balanced, to say the least. Stevenson is in no wise impeached. Whether the plaintiff's letter detracts anything from his credibility as a witness, it is not necessary for me to say. Which way do the circumstances point? They are undoubtedly against the plaintiff. It is uncontradicted that defendant is a man of large wealth. Why should he falsely represent the condition of his property, when the evidence was at hand to disprove his statements. He was a part owner of the hotel in which the settlement was made, and he knew plaintiff could have learned that he still owned it, by asking the proprietor of the hotel, who owned the other interest. Besides defendant owned other real estate in the town, and if he had not sold it the plaintiff could have found it out by making the least inquiry. So the proposition seems to me to be unreasonable that the defendant should have made any such false statements. But if it be conceded that he did make them, it is unreasonable that plaintiff should have relied on them; and as a matter of law he had no right to rely on them for the evidence was at hand to verify or refute the statements. The settlement was made at Sulphur Springs. The plaintiff knew that the defendant owned a large amount of real estate in and about the town; that he owned a part of the hotel building at which he was stopping, and it is incredible that he would compromise a claim of $3,500 for $250, without making any inquiry as to the truthfulness of defendant's statements. As the defendant was a non-resident and his property subject to attachment, it is much more reasonable to suppose that plaintiff, if he had any confidence in the justness of his claim, would have made an investigation with a view of enforcing payment, rather than accept a mere pittance. Under

this proof why should the case be remanded? The practice in this state is, that "when all the elements which are necessary to enable the appellate tribunal to make a decree are in the record of an equity case, the appellate court will enter a final decree instead of reversing and remanding." Finkelnburg, Mo. App. Prac., p. 98. The foregoing text is supported by an unbroken line of decisions both in this court and the supreme court. *Darrier v. Darrier*, 58 Mo. 222; *Huff v. Shepard, Ibid.* 242; *Ringo v. Richardson*, 53 Mo. 385; *Kinealy v. Macklin*, 2 Mo. App. 241; *Pfau v. Breitenburger*, 17 Mo. App. 19; *Carroll v. Campbell*, 25 Mo. App. 630. ' In the case at bar all the facts are here. There is no suggestion of surprise, mistake, omission, newly discovered evidence or anything which would afford the least excuse for the violation of a rule of practice that is recognized and enforced everywhere. Hence I dissent from the action of my associates in remanding the case.