MARY JENKINS, Respondent, v. COVENANT LIFE
INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, February 20, 1899.

1. **Tender:** CANCELLATION OF RELEASE: EQUITY PRACTICE. In an action to cancel a release on the ground of fraud, an offer in the bill to return the money received at the time of its execution answers the requirements of courts of equity.

2. —— : ——: SEPARATE POLICIES OF INSURANCE. In a bill to cancel on the ground of fraud a release of a policy of insurance, it is sufficient to offer to return the money paid at the execution of such release without tendering the money paid at the same time for the release of another policy, though the plaintiff gave one receipt for both sums.

3. ——: ——: STATU QUO. Before a party can rescind a contract for fraud he must first restore to the other party all he received as a consideration therefor, but one who attempts to rescind a transaction is not required to restore that which in any event he would be entitled to retain either by virtue of the contract assailed or of his original liability.

4. **Release:** CANCELLATION OF: FRAUD: CONSIDERATION. The evidence in this case is considered, and a release made by plaintiff is held to have been secured by fraud and to be without consideration and therefore properly canceled.

*Appeal from the Jackson Circuit Court.*—HON. O. H. DEAN, Special Judge.

AFFIRMED.

LATHROP, MORROW, FOX & MOORE for appellant.

(1) There was no sufficient tender made by plaintiff. To rescind the contract of settlement, plaintiff must return, or offer to return, all the consideration for the settlement. The contract of settlement was an entire contract covering

both policies, and to have any standing in a court of equity, plaintiff must tender back the $1,013.60 received by her. Och v. Railway, 130 Mo. 27; Carson v. Smith, 133 Mo. 606; Estes v. Reynolds, 75 Mo. 563; North v. Stevenson, 71 Mo. App. 427; Kirk v. Seeley, 63 Mo. App. 262; Shoe Co. v. Bank, 56 Mo. App. 662; Lewis v. Land Co., 124 Mo. 672; Iron Co. v. Berg, 66 N. W. Rep. 8; Duncan v. Humphries, 58 Ill. App. 440; Moore v. Benefit Ass'n, 43 N. E. Rep. 298; Ewing v. Brake-Shoe Co., 47 N. E. Rep. 241; Lumley v. Railway, 71 Fed. Rep. 21; Breyfogle v. Walsh, 80 Fed. Rep. 172; 21 Am. and Eng. Ency. of Law, pp. 84, 86, 91; Munsey v. Pen Co., 38 N. Y. Supp. 159; Martin v. Fridenberg, 32 Atl. Rep. 429; Dennis v. Kuster, 45 Pa. Rep. 602; Morris v. Wibaux, 43 N. E. Rep. 837; 7 Am. and Eng. Ency. of Law [2 Ed.], p. 96; Murphy v. St. Louis, 8 Mo. App. 483; Hill v. Mining Co., 119 Mo. 9.    (2)    The release in this case is valid and a complete bar to the prosecution of any action, until set aside by a court of equity.    Before the court will set aside a release, the plaintiff must show by clear and satisfactory evidence that it was obtained by fraud.    The burden of proving such fraud is on plaintiff.    Hancock v. Blackwell, 139 Mo. 440; McFarland v. Railway, 125 Mo. 253; Homuth v. Railway, 129 Mo. 629; Och v. Railway, 130 Mo. 27; Howard v. Ins. Co., 29 S. E. Rep. (Ga.) 143; Breemersch v. Linn, 59 N. W. Rep. (Mich.) 406; Vandervelden v. Railway, 61 Fed. Rep. 54; Ins. Co. v. Bredehoft, 68 N. W. Rep. 400; Warren v. Ritchie, 128 Mo. 311; Martin v. Estes, 132 Mo. 402; Garesche v. MacDonald, 103 Mo. 1; Mateer v. Railway, 105 Mo. 320; Robinson v. Dryden, 118 Mo. 534; Lewis v. Land Co., 124 Mo. 672; State ex rel. v. Hope, 102 Mo. 410; Desberger v. Harrington, 28 Mo. App. 632; Shoe Co. v. Casebeer, 53 Mo. App. 640; Jackson v. Wood, 88 Mo. 76; Keiser v. Gammon, 95 Mo. 217; Currey v. Lawler, 11 S. E. Rep. (W. Va.) 897; Safe & Lock Co. v. Barnes, 53 Ill. App. 144; Thompson v. Cohen, 127 Mo. 215; Ordway v.

Ins. Co., 35 Mo. App. 426. (3) The question of considera-
tion or no consideration for a settlement and re-
lease, is a question for the jury, and the defend-
ant has a constitutional right to have a jury pass
on every material allegation in a case against it. Fraud
is the only ground for setting aside a release on which a
court of equity must necessarily pass, and if the release in
this case is not set aside for fraud, it can not be attacked for
lack of consideration in this forum. Hancock v. Blackwell,
139 Mo. 440; Henderson v. Dickey, 50 Mo. 161; McFarland
v. Railway, 125 Mo. 253; Lancaster v. Elliot, 55 Mo. App.
249; Houck v. Frisbee, 66 Mo. App. 16; Lamp Co. v. Mfg.
Co., 64 Mo. App. 115; Battle v. McArthur, 49 Fed. Rep.
715; Treat v. Price, 66 N. W. Rep. (Neb.) 834; Lawrence
v. Coddington, 52 Ill. App. 133; Stoelke v. Hahn, 55 Ill.
App. 497; Ins. Co. v. Bredehoft, 68 N. W. Rep. 400;
Brownlow v. Wollard, 66 Mo. App. 636; Jacobs v. Life
Ass'n, 142 Mo. 49.

PAXTON & ROSE and FLOURNOY & FLOURNOY for respond-
ent.

(1) Plaintiff in her bill tendered the amount received
on policy number 8174, and also made a tender in court.
This was sufficient. North v. Stevenson, 71 Mo. App. 427,
432; Och v. Railway, 130 Mo. 27, 45. Both these cases cite
with approval. Cleary v. Elec. Light Co., 19 N. Y. Supp.
951. (2) No tender was necessary because plaintiff only
received the amount which was conceded to be due her in
any event. Not having received any consideration for the
settlement, it was not necessary to tender back anything be-
fore it was set aside. Shultz v. Christman, 6 Mo. App. 338;
Hachett v. Emerson, 73 Mo. App. 290; Winter v. Railway,
73 Mo. App. 173, 202. (3) It was understood by the par-
ties (and is not denied at any stage) that the $1,000 was paid
on policy number 8173 and the $13.60 on policy number

8174. The parts of the release are divisible and they do not stand or fall together. Costigan v. Hawkins, 22 Wis. 74; 94 Am. Dec. 583; Young v. Wakefield, 121 Mass. 91; Johnson v. White, 2 Mo. 223; Wooten v. Walters, 110 N. C. 251; Keeler v. Clifford, 165 Ill. 544; Pierson v. Crooks, 115 N. Y. 539; 12 Am. St. Rep. 831. (4) There was no consideration for the release in question. This is conceded by all the testimony on both sides. See as bearing on question of sufficient consideration: Ins. Co. v. Wickham, 141 U. S. 564; Winter v. Railway, 73 Mo. App. 173. (5) Want of consideration, it is true, renders an instrument, such as the release in question, void, and that invalidity appearing in a suit at law, it will not be allowed to bar the legal action. But when on its face the instrument is valid, and evidence *dehors* the instrument is necessary to show its invalidity; it is the province of a court of equity in a suit instituted for that purpose to cancel it. 1 Pom. Eq. Jur., sec. 280; Snell's Principles of Equity, p. 519; Winter v. Railway, 73 Mo. App. 173; Railway v. Railway, 81 Fed. Rep. 595; Kramer v. Williamson, 135 Ind. 655; 35 N. E. Rep. 388. (6) The certificate did not contain the statement the agent said was there, and even if it had, under the laws of this state, it would not have rendered the policy void in case it were not true. For this fraud the court was justified in canceling the release in question, for a false representation as to the law, as well as to a fact, suffices to set aside an instrument of this character. R. S. 1889, secs. 5849, 5850; Thassler v. Ins. Co., 67 Mo. App. 505; Ins. Co. v. Wood, 54 Kan. 663; Sanford v. Ins. Co., 11 Wash. 653; Bevy v. Ins. Co., 132 N. Y. 49; Wheeler v. Smith, 9 Howard (U. S.), 65.

GILL, J.—The defendant insurance company has appealed from a judgment in the lower court setting aside a settlement and compromise it claims to have made with the plaintiff, on account of a $1,000 policy said defendant issued

on the life of plaintiff's husband, said policy being payable, on death of the assured, to plaintiff.

In April, 1890, defendant issued two policies each for $1,000 on the life of plaintiff's husband and both for the benefit of this plaintiff. One (number 8173) was an ordinary life rate endowment policy, requiring the payment of a semiannual premium of $12.90; and the other (number 8174) being the one in suit, was a ten year policy on which the semiannual payment was $6.80. The premiums were due on the twenty-fourth days of April and October of each year, and they were paid by Jenkins until October 24, 1896, when he defaulted on the premiums then due. But on December 12 thereafter Jenkins applied to defendant and on payment of the delinquent premiums both policies were reinstated. Jenkins continued to pay the premiums, as they matured, until his death in July, 1897. Plaintiff in due time made proper proofs as required by the policies.

STATEMENT.

About three months after Jenkins' death one of defendant's agents came to Independence, where Mrs. Jenkins then resided, and secured from her an alleged compromise and settlement, whereby she accepted $1,013.60 in full discharge of defendant's liability on both policies and she at the time executed a writing to that effect. In this sum was included the $1,000 as payment of policy number 8173, and $13.60 as return of premiums paid by Jenkins on policy 8174 after the same had been reinstated.

Plaintiff's petition contains two counts—the first in equity to set aside the settlement because of the alleged fraud of the agent in procuring the same and want of consideration, while the second count is one at law for recovery of $1,000, for the face value of policy number 8174. At the trial of the equity count the circuit court found that the settlement or release in question was procured by fraud and

was without consideration, and from a decree canceling the
same defendant has appealed.

1.   In plaintiff's bill, praying the cancellation of the
release, she offered to return the $13.60 received by her
when the release was executed, and followed this by a ten-
der at the trial.   If a tender was required at all, this seems
sufficient as to the time when made.   In ac-
tions of this kind a tender by the bill of com-
plaint seems to answer the requirement in
courts of equity.   Hancock v. Blackwell, 139
Mo. 453; Och v. Railway, 130 Mo. 48; North v. Stevenson,
71 Mo. App. 427, 432.

TENDER: cancella-
tion of release:
equity practice.

But defendant contends that plaintiff should have ten-
dered back not only the $13.60 paid to her for and on ac-
count of policy 8174 but also the $1,000 paid on account of
policy 8173, that is that the tender should
have been $1,013.60 instead of $13.60.   I
fail to discover any reason or authority for
this contention.   Conceding the rule, and for
the time being its application to the facts of this case, that a
party seeking to set aside a release must first return to the
other party whatever of consideration he has received
thereon, and yet plaintiff was not bound to pay back to de-
fendant the $1,000 gotten from it in settling its liability on
policy 8173.   Notwithstanding said $1,000 was in-
cluded in the receipt given by the plaintiff, it is yet clear
from the evidence and so conceded, that said payment on
policy 8173 had no legitimate connection with settling or
compromising any claim on policy number 8174.   They
were indeed separate and distinct matters.   As to policy
8173 there was no dispute as to defendant's liability for the
full amount of its face value, $1,000.   It belonged to that
class of policies non-forfeitable under the statute, because
of default in payment of premium, and defendant has all

—: —: separate
policies of in-
surance.

the time admitted that the reserve fund attached to said policy was sufficient to keep it alive as a valid obligation even beyond the life of the assured. Defendant then was liable absolutely on said policy 8173 for its face value of $1,000 and so confessed by it.

But it seems that policy 8174 was of a different character; it had no accumulated or reserve fund when it lapsed for non-payment of premium. The only matter of dispute then really existing between the plaintiff and defendant was in relation to policy 8174, and this was manifestly the only subject of compromise, and in fact was the only matter compromised. In payment of defendant's undisputed obligation on the first mentioned policy it paid the plaintiff $1,000 while on a pretended compromise of its liability on the last defendant paid plaintiff $13.60. This latter then was the only sum which plaintiff could, in any event, be called on to return, or offer to return, before attacking the release. This was all that she received on that account. The two policies, with the respective payments thereon, are severable and distinct and were so treated and understood by the parties. Because evidence as to the payment of the one and the so-called compromise of the other, is found in the same paper, will not weld the two matters into one inseparable entirety. The courts, especially those of equitable jurisdiction, do not hesitate to ignore form and consider substance.

But in our view of this case, the plaintiff was under no obligation to return or offer to return any of the money she had received. She had the right to prosecute this suit to cancel the release without offering to restore the $1,013.60 or any part thereof. In any view of the case— ——: ——: statu whether Jenkins by misrepresenting the quo. condition of his health, did or did not procure reinstatement of the policies, or whether or not plaintiff was overreached and fraudulently induced to sign the release—plaintiff was entitled to retain the money

in question.   As already stated, it is conceded that defendant owed her the $1,000 paid on account of policy 8173, and it is equally as certain that on defendant's theory the plaintiff was entitled to the $13.60 paid on account of policy 8174. This last sum was the amount of two semiannual premiums on that policy paid by Jenkins during his life.   Now the defense to this policy is, that said assured, Jenkins, procured a reinstatement by misrepresenting, in his application, the condition of his health at that time.   The statute (R. S. 1889, sec. 5850) precludes the defendant from making such a claim or defense until it shall restore to the plaintiff the premium so received.   So then on defendant's theory, the premiums, so paid plaintiff on the alleged compromise, were no more than she was legally entitled to.   And on plaintiff's theory, that she is entitled to recover on the policy, the defendant has paid her only a *part* of what it justly owes her.   This then is the condition of things.   Defendant insists that before being allowed to prosecute this action plaintiff ought to restore this $1,013.60, although confessedly and unquestionably she had a just claim to every cent of it and more, too, if her claim on the disputed policy should be sustained.

While then the rule is general that before a  party can rescind a contract for fraud he must first restore to the other party all that he has received as a consideration therefor, in other words must put the other party *in statu quo*  yet the exception is equally as well established, "that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of  the contract sought to be set aside, or of the original liability."   Winter v. Railway, 73 Mo. App. 173, 202, and authorities cited.   As said there, a distinction exists between cases of this nature and where no liability at all is conceded.   Of course if plaintiff should ultimately succeed in this action, and on both counts.

Jenkins v. Ins. Co.

of the petition, the defendant should be credited with the $13.60; if however she should fail then she has no more than is allowed her whatever the result may be.

2. The court below found that the release from plaintiff to defendant was obtained by the fraud and undue influence of defendant's agent and besides was given without any consideration. From a careful reading of the evidence set out in the record we come to the same conclusion. In the testimony of the two principal witnesses, the plaintiff and the adjusting agent, there appears some conflict. In settling this and determining which of the two gave a true version the trial judge was in a better situation than we are; he was face to face with the witnesses and could for that reason the better decide as to their credibility. We are not bound, of course, by the judge's finding of facts, it is our duty to examine the evidence and correct, if necessary and proper, such finding, yet in matters of such conflict we are authorized to defer somewhat to the conclusions reached by the trial judge.

RELEASE: cancellation of: fraud: consideration.

Plaintiff and defendant's adjusting agent did not meet, in this negotiation for compromise, on equal terms. She was a negro woman, having some education it is true, being a school teacher, with little or no knowledge of business. The agent called at her home and through a long interview of about an hour and a half succeeded in convincing her that she had in fact no legal claim, that her husband when applying for reinstatement of the policies had falsely stated that he was in "perfect health" and that this rendered her policies void; that he, the agent, had come to settle on the terms proposed or at once engage lawyers to fight the claim, etc., but offered her as a settlement the full payment of the policy number 8173 (on which the company in fact had no defense and the agent knew it) and further would pay the $13.60

(premiums theretofore paid by the husband) for a full release and discharge of policy 8174. As already stated as to policy 8173 there was no defense or legitimate excuse for refusing to pay its full value. This, too, the agent well knew, and knew also that his company was bound to return the $13.60 even though the policy (8174) on which the same was paid might be avoided by reason of the husband's misrepresentations as to "perfect health." More than this the evidence shows that in the husband's written or printed application for reinstatement of the policies, he did *not* state that he was in "perfect health." According to plaintiff's testimony, however, the agent pretended that the application contained these words; he read from a paper, which he said was the husband's statement and showed the plaintiff the husband's signature thereto, falsely inserting the words "perfect health." The plaintiff testified that her husband was, at the date of the certificate in question, in fairly good health, but she might well fear that he was not in the "perfect health" so falsely pretended as stated in the husband's application.

It is true the agent suggested that plaintiff might consult a lawyer, but at the same time warned her of a probable and useless expense in so doing.

It is also significant that the release prepared by the agent should have the plaintiff state that "I hereby of my own free will and accord accept the sum," etc., and that in addition to this a plain receipt should also be signed at the agent's request and that all these should be sworn to. These and other circumstances are of weight when investigating a question of fraud; it is by the aid of such small matters that often leads to the detection of fraud.

Without further discussion then, we think that the record shows that plaintiff was overreached and fraudulently induced to enter into a so-called compromise and sign a

release, which if she had been fairly advised as to the facts and her undisputed rights she would have rejected.

The court was also correct in holding that the pretended release was without consideration. Conceding that an honest dispute existed as to defendant's liability on policy 8174 it is yet clear that defendant parted with nothing nor did plaintiff receive anything as a consideration for abandoning all claim on such policy. As heretofore stated, plaintiff was at all events, and on any theory of defense, entitled to every cent paid her by the defendant.

The judgment will be affirmed. All concur.