## McNeill v. State.

## Opinion delivered February 8, 1915.

1. APPEAL AND ERROR—INCOMPETENT EVIDENCE—HARMLESS ERROR.—In a prosecution for bigamy, the introduction in evidence of an improperly authenticated certificate of marriage between defendant and his first wife, will be held harmless error, when the marriage was proved by other uncontradicted testimony.

2. BIGAMY—CORPUS DELICTI—PROOF.—In a prosecution for bigamy the second marriage constitutes the *corpus delicti*, and must be proved by the record of the marriage to have been a marriage which was in all respects legal except that the accused had another wife at the time.

3. BIGAMY—FIRST MARRIAGE—HOW PROVED.— In a prosecution for bigamy the first marriage may be established by proof of admissions of accused, by reputation or by any other proof tending to show a marriage.

4. EVIDENCE—HANDWRITING—COMPETENCY OF A WITNESS.—In a prosecution for bigamy, the testimony of a witness, who did not claim to be an expert on handwriting, but who had made a study of penmanship and was familiar with defendant's signature, is competent to identify defendant's signature to certain papers offered in evidence.

5. EVIDENCE—INTERCEPTED LETTERS—HUSBAND AND WIFE.—In a prosecution for bigamy, the prosecution offered in evidence letters purporting to be written by defendant to his first wife, for the purpose of showing his marriage to her. *Held*, when the letters fell into the hands of a third person, without being forcibly taken from the wife or by other sort of compulsion to obtain them from her, they are competent evidence against the husband.

6. EVIDENCE—PROOF OF MARRIAGE—PRIVILEGED COMMUNICATIONS.—In a prosecution for bigamy, where the question at issue is defendant's marriage to the first wife, letters written by him to her are admissible in evidence to establish that fact.

Appeal from Pike Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

*J. C. Pinnix, W. T. Kidd, A. D. DuLaney, Langley & Steel* and *Steel, Lake & Head,* for appellant.

1. The Missouri record could only be proved in the way pointed out by the act of Congress. The papers produced at the trial were not properly authenticated, and should not have been admitted in evidence.

The marriage license itself was the best evidence, and in the absence of proof of its loss secondary evidence was not admissible.   72 Ark. 47; 49 Ark. 156.

The testimony of a witness to the effect that a certain copy of a document is substantially the same as the original, is inadmissible.   1 Ark. 232.

2.   The letters marked "4 to 14" were improperly admitted.   No one of the three witnesses who testified concerning them qualified as an expert on handwriting.

If properly identified, they were still not admissible, because they were privileged communications.   70 Ark. 204; 137 U. S. 496; 62 L. R. A. 172; 17 *Id.* 723; 59 *Id.* 588; 86 N. E. 476; 120 Am. St. Rep. 1009; 114 S. W. 811.

The mere fact that the alleged wife voluntarily surrendered the letters to the prosecution does not render them admissible.   It does not render them admissible any more than if they had been taken by force.   40 Cyc. 2357; 17 S. E. 990; 50 Cent. Dig., "Witnesses," subdiv. 738.

3.   The marriage in Missouri must be proved as an existing fact.   The admissions of appellant to Doctor Cox were wholly insufficient to establish that there was a marriage in Missouri between appellant and Estelle Williams.   4 Minn. 335; 12 Minn. 476; 103 Mo. 266; 35 Kan. 626; 5 Utah, 621; 94 Tenn. 86; 34 Tex. Crim. 296.

*Wm. L. Moose,* Attorney General, *Jno. P. Streepey,* Assistant. and *C. A. Fuller,* Prosecuting Attorney, for appellee.

1.   The photographic exhibits to the testimony of the witness Terrell were properly admitted.   49 Ark. 157, 158.

Certified copies of records of other States, when under the seals of duly elected and qualified officers, are admissible in evidence.   26 Ark. 530, 531.

Where a witness swears that a paper offered in evidence is a correct copy of the original, it is admissible, even though he does not swear that he compared them.   1 Crawford's Dig. 678; 12 Ark. 672.

2. The letters from appellant to his alleged wife were properly admitted, and the identification thereof was sufficient.   73 Ark. 499, 500.

The testimony of the alleged wife would have been admissible.   Kirby's Dig., § 3092; 68 Ia. 155; 55 *Id.* 217; 31 *Id.* 24; 107 N. C. 885; 61 Neb. 589.

3. The admissions of appellant were sufficient. They were voluntarily made and thereafter proof was supplied that the offense was committed.   99 Ark. 453.

McCulloch, C. J.   Appellant was indicted by the grand jury of Pike County for the crime of bigamy, alleged to have been committed in that county by marrying Pearl Kelley.   The first marriage was contracted in the State of Missouri.   There was no dispute about the marriage alleged to have been bigamous, but the sole controversy in the trial below was whether or not appellant had contracted a former marriage and was a married man at the time he entered into the marriage with Pearl Kelley.   Appellant did not introduce any testimony, but saved several exceptions to that adduced by the State.

(1)   The first exception relates to the introduction of a copy of the marriage record at Springfield, Missouri, showing the intermarriage of John McNeill and Estelle Williams.   The ground of the objection was that the copy was not authenticated in accordance with the statutes of the United States on that subject.   This exception is well taken, for the record was certified by the recorder of deeds, who is the custodian of marriage records in the State of Missouri, and by the clerk of the county court, but not "by the presiding justice of the court of the county, parish or district in which such office may be kept, or of the Governor or Secretary of State, the chancellor or keeper of the great seal of the State, Territory or country" as required by the Federal statute.   Revised Statutes of the United States, § 906.   The marriage was, however, proved by other uncontradicted testimony, and if that testimony was competent the erroneous admission in evidence of the certified copy was not prejudicial to appellant.   There was also an objection interposed to the other testimony, and that, too, is urged as grounds

for reversal. A witness testified that he examined the original record in the hands of the proper custodian in Missouri and compared a photograph of it which was also introduced in evidence. He testified that the photograph was an exact copy, showing the signature of appellant to the application for license. There was other testimony tending to the identification of the signature as that of appellant. That testimony came from other witnesses who are experts in handwriting. Now, the testimony, taken together, showed that one John McNeill was married to Estelle Williams in Springfield, Missouri, on September 8, 1911, and that the signature of John McNeill to the application for license was that of appellant. A brother of Estelle Williams testified that on September 8, 1911, he saw his sister and appellant on board the train at Rolla, Missouri, bound for Springfield, whence his sister was going to attend school. The State also proved a statement of appellant's to an acquaintance in Pike County to the effect that he had ''married a girl in Missouri,'' and that appellant showed the witness a photograph of the girl he claimed to have married, which the witness identified at the trial as the picture of Estelle Williams. There was still other testimony in the form of letters proved to be in the handwriting of appellant which contained statements tending to show that he was married to Estelle Williams. The introduction of those letters was objected to, and their admissibility in evidence will be discussed later.

(2-3) There is no escape from the conclusion, if all this testimony be considered, that appellant was married to Estelle Williams, and that he had a lawful wife at the time he entered into the bigamous marriage with Pearl Kelley as charged in the indictment. The last marriage constituted the *corpus delicti* and must be proved by the record of the marriage to have been a marriage which was in all respects legal except that the accused had another wife at the time. The first marriage may be proved by other modes. It may be established by proof of admissions of the accused, or by reputation or by any other

proof tending to show a marriage. *Halbrook* v. *State,* 34 Ark. 511. There are authorities cited in appellant's brief to the effect that the first marriage can not be proved by admissions of the accused, but the weight of authority is the other way, and our court in the Halbrook case adopted the other rule, which we think is perfectly sound for the reason that the last and not the first marriage constitutes the body of the offense and the first may be established by admissions of the accused without any other proof on that point. We think that so far as concerned the first marriage, it was competent to prove the fact in the way it was done in this case, other than by introduction of a properly authenticated copy of the marriage record. There was no prejudice, then, in the erroneous admission of the insufficiently authenticated copy of the record, for, as above stated, the competent testimony on that subject was undisputed.

(4) It is insisted that the court erred in permitting a witness, one Terrell, to testify concerning the signature of appellant without first showing himself to be an expert on handwriting. The witness disclaimed being an expert on that subject, but said that he was in the mercantile business, had studied penmanship, and that he was entirely familiar with appellant's signature. We are of the opinion that this qualified him to give his opinion as to whether or not the signatures to the papers introduced in evidence were those of appellant. If it had been a matter of comparison of handwriting which the witness was not acquainted with, it would perhaps be correct to say that he was not sufficiently qualified as an expert to testify on that subject, but he only testified about the signature with which he claimed to be familiar, and we entertain no doubt that that testimony was competent to go to the jury for what it was worth.

(5-6) The next ground urged for reversal is that the court erred in permitting the State to introduce in evidence the letters said to have been written by appellant to his wife whom he married in Missouri. These letters all contained statements which the jury might

have accepted as admissions that the woman to whom they were addressed was his wife. The name of the person to whom they were addressed was one of endearment used by members of her family in addressing her, and the evidence is sufficient to establish the fact that appellant wrote the letters. It is insisted, however, that the letters constituted privileged communications on account of the fact that they were written by appellant to his wife, and that for that reason they should not have been admitted in evidence. The letters were produced by the prosecuting attorney and were introduced in evidence during the examination of witness Terrell, who identified the signatures thereto as being those of appellant. It was shown by the testimony of a brother-in-law of appellant's wife (Estelle Williams) that a few days before the trial he procured the letters from his sister and turned them over to the prosecuting attorney. The court refused to permit the wife to testify as a witness in the case, but allowed the letters to be read. We think this question is concluded by the decision in *Hammons* v. *State,* 73 Ark. 495, where it was held that intercepted letters from the husband to the wife could be used in evidence against the former in a trial on a charge against him of rape. In that case the letters accidentally fell into the hands of the prosecution before they reached the hands of the wife. The case differs from this in that the evidence here shows that the wife, after receiving the letters, turned them over to her brother and that he delivered them to the prosecuting attorney for the purpose of being used in evidence. The authorities on this subject are fully reviewed in the *Hammons* case, *supra,* and this court adopted the rule that it was not a violation of the privilege to admit the letters in evidence unless the wife was called to testify or forced to produce them, or that they were wrongfully taken from her custody. The only conclusion to be logically drawn from that decision is that where the letters fall into the hands of a third person, without being taken forcibly from the wife or by other sort of compulsion to obtain them from her, they

are competent evidence against the husband. Moreover, we are of the opinion that the letters were competent in this case, on another ground, and that is that there was no privilege in withholding letters tending to establish the first marriage. While appellant did not testify in the case or introduce any testimony, his attitude of defense was one that he had not entered into a marriage prior to that contracted with Pearl Kelley; therefore, it was an inconsistent position for him to occupy, and at the same time claim the right to exclude letters written to Estelle Williams on the grounds that she was his wife. Some of the courts hold that in a bigamy case the first wife is the injured party and for that reason may testify. The cases are cited on the State's brief. The weight of authority is perhaps against that view, but the difference arises in cases where facts are sought to be proved by the wife other than the fact of marriage. We agree fully with the North Carolina court in the statement that "the fact of marriage is not within the reason of the rule of public policy which makes the husband or wife incompetent to prove any transactions after marriage. In its nature marriage is intended to be not confidential but public and notorious." *State* v. *McDuffie*, 107 N. C. 885. In other words, the cases are not confined to those where the marriage only is sought to be proved, and we are of the opinion that the sound rule is that where only the fact of marriage is involved the privilege is not violated by the introduction of letters containing admissions as to the marriage.

We conclude that the trial of this case was free from any prejudicial error and that the judgment of conviction should be affirmed.

It is so ordered.

Hart, J., (dissenting). It will be noted that the letters written by the defendant to his wife and delivered by her to her brother for the purpose of being given to the prosecuting attorney to be used as evidence in this case, have been held competent on the authority of *Hammons* v. *State*, 73 Ark. 495. The court says in effect that

where letters fall into the hands of a third person without being taken forcibly from the wife or obtained without any other sort of compulsion, they are competent evidence against the husband. In my judgment this is to overrule *Ward* v. *State,* 70 Ark. 204, and to greatly extend the doctrine in *Hammons* v. *State, supra.*

In the Ward case a letter was taken from the wife after it was delivered to her and the court held that it was not admissible in evidence against the husband. In the Hammons case a letter was intercepted before it reached the wife and the letter was admitted in evidence, but the court expressly disclaimed any intention of overruling the Ward case. The court went no further in the Hammons case than to hold that a letter written by a husband to his wife may be offered in evidence against the husband when not in the custody of the wife or control of her agent or representative, but is in the control of a third person without her connivance or voluntary act.

In the case before us the court has held that a wife may voluntarily and with hostile intent deliver a letter written to her by her husband to a third person for the purpose of having it introduced in evidence against the husband. It is true some courts have held that when papers or letters are offered in evidence the court can take no notice of how they were obtained because to try that question would be to permit a collateral issue to be tried; but it will be noted that our court in the Ward and Hammons cases has not adopted that view and the decision in the present case does not rest on that ground. The rule which protects confidential communications of this nature was established on grounds of public policy for the purpose of encouraging mutual confidence between husband and wife and thereby promoting the happiness of the married state. To this end the common law provides that all communications between husband and wife which are of a confidential nature shall be kept inviolate. In the Ward and Hammons cases it was recognized that this provision extended to written as well as oral communications. It is obvious that the present de-

cision limits the protection to oral communications and to such written communications as are taken from the spouse by force; for the spouse having possession of the letters can always deliver them to a third person for the purpose of being used in evidence against the spouse who wrote them, and thus by his or her voluntary act defeat the very purpose of the rule.

That the court did not intend that such construction be placed upon its opinion in the Hammons case is evident from the language contained in the opinion. Stress is laid several times in the course of the opinion on the fact that there was no evidence connecting Mrs. Hammons in any way with the delivery of the letter to the witness. I think also that the language of the dissenting opinion bears out the views I have here expressed. Otherwise, in discussing the difference between the Ward and Hammons cases why say, ''The fact that the letter was forcibly taken from the wife on the one hand, and that it was intercepted before it reached the wife on the other hand, should not be a controlling distinction.''

The court also held that the letters were competent because it is inconsistent for the defendant to claim the right to exclude the letters to Estella Williams on the ground that she is his wife and at the same time claim that he had not been married to her. The defendant entered a plea of not guilty and it then devolved upon the State to prove beyond a reasonable doubt that he was guilty. It was not incumbent upon the defendant to introduce any testimony whatever. One of the essential elements of the offense was that he should have a wife living at the time he married another. It was incumbent upon the State to prove that he had a living wife when he married the second time and this proof should have been made by competent testimony.

Therefore, if I am correct in holding that the letters written to his first wife could not be used in testimony against him the defendant would not be bound by any rule of estoppel from objecting to the introduction of such letters.