**Paul R. DURR, Executor of the Estate of Louis Vick, Respondent,**

v.

**Mary VICK, Appellant.**

**No. 48101.**

Supreme Court of Missouri,

Division No. 2.

April 10, 1961.

John Grossman, St. Louis, for appellant

Victor A. Wallace, St. Louis, for respondent.

STORCKMAN, Judge.

This action was brought by Louis Vick against his former wife, Mary Vick, to recover one-half of the proceeds of certain promissory notes payable to Louis and Mary jointly and secured by a deed of trust on real estate formerly owned by them as husband and wife. Louis Vick died prior to trial and the action was revived and further prosecuted by his executor as plaintiff. A jury having been waived, the cause was heard by the court and judgment was rendered in favor of the plaintiff for principal and interest in the total sum of $20,296.16. The defendant filed a motion for a new trial which was overruled and she has appealed.

The plaintiff's evidence consisted chiefly of a certified copy of the deed by which Louis Vick and Mary Vick acquired real estate on the corner of Grand and Juniata in St. Louis, a certified copy of the deed of trust which secured and described the series of notes in question, certain interrogatories propounded by the plaintiff and the defendant's answers, and the depositional testimony of the defendant Mary Vick. No evidence was offered by the defendant. The substance of the questions presented on appeal is that the court erred in admitting in evidence the defendant's testimony that she and her husband "had a verbal agreement that he was to get half and I was to get half" of the proceeds of the notes, that the deposition of the defendant tended to prove that she owed the plaintiff nothing, and that the plaintiff having introduced the deposition was bound by it and therefore was not entitled to recover.

In general the evidence tended to prove that Louis Vick and Mary Vick were married when they acquired the real estate on April 23, 1945, under a deed in which they

were both named as grantees. In October 1948 they sold the property for $100,000 of which they received $15,000 in cash and $85,000 in promissory notes secured by a deed of trust on the property. The payees in the notes were Louis Vick and Mary Vick. The notes, including principal and interest, were in equal amounts payable monthly over a period of ten years, except the last one, commonly referred to as the "balloon note", which was for $43,530.46.

When the notes were delivered, Louis and Mary endorsed them and Mary put them in a safe deposit box at the Easton-Taylor Trust Company which stood in both of their names. Each month, Mary would take from the box the note then due and deliver it to Mr. Harold Roberts, a real estate man, for collection. Mr. Roberts would make the collection and remit half of the proceeds to Louis and the other half to Mary. The couple separated "along in '52, '53 or '54", and thereafter when "the box expired" Mary took a box in her name alone and put the notes in it. Nevertheless, Mr. Roberts continued to collect the notes and remitted the proceeds in equal shares to Mary and her husband until about July 5, 1955, when the remaining notes were paid off and the deed of trust was satisfied. At that time Mrs. Vick, without Mr. Vick's knowledge, received a check for $55,635.50 which she deposited in her account at the Mercantile Trust Company. Mr. and Mrs. Vick were divorced August 14, 1956.

Apparently Mrs. Vick did not disclose to Mr. Vick until sometime in 1958 that the notes had been completely paid in July 1955. She testified: "I continued on to pay him his half plus the interest out of my own pocket, which amounted to about $175.00 a month, more or less. I don't know the exact amount—out of my own pocket I was paying him this interest. However, he didn't know that, and I continued to do that until the last three notes of 1958 when I paid him $175.00 less the interest." The suit was filed on August 6,

1958. In her answer and in her testimony, the defendant admitted she had paid Mr. Vick in monthly installments at least $9,025 subsequent to the time the notes were paid off in July 1955.

When her deposition was taken, plaintiff's counsel asked, "Who got the notes and who kept them?" and the defendant answered, "I was the one that got them. He turned the notes over to me. We had a verbal agreement that he was to get half and I was to get half." At the trial and here, the defendant objects to the admission in evidence of that part of the answer reading: "We had a verbal agreement that he was to get half and I was to get half." The grounds of objection urged here are that the statement (a) "was a conclusion on the part of the witness", and (b) "was in the nature of a privileged communication between husband and wife." Among other things the plaintiff contends that the defendant has waived her right to object but, without deciding that point, we shall treat the objections as if they had been properly and timely made. We will take up the grounds of objection in inverse order.

■ The defendant contends that the statement objected to was a privileged communication within the meaning of § 491.020 RSMo 1949, V.A.M.S. This statute to a limited extent removes the common law testimonial disqualification of a husband and wife; it concludes with the proviso: "* * * that nothing in this section shall be construed to authorize or permit any married woman, while the relation exists, or subsequently, to testify to any admission or confidential communications of her husband, made to herself; and provided further, that nothing in this section shall be construed to authorize or permit any married man, while the relation exists, or subsequently, to testify to any admission or confidential communications of his wife, made to himself." The defendant cites Tucker v. Tucker, 224 Mo. App. 669, 31 S.W.2d 238, and Reeve v.

Reeve, Mo.App., 160 S.W.2d 804, which recognize and apply the general rule that conversations or communications between a husband and wife, without the presence of anyone else, are privileged and not admissible in evidence over a timely and proper objection. Such cases are not decisive of the question presented.

The statement objected to is not in form an admission or confidential communication between husband and wife within the meaning of § 491.020; nor does it affirmatively appear to be based upon any such admission or communication made in the absence of a third person. But regardless of the precise legal character of the statement, the objection made is not available in view of the nature of the transaction involved. "The better reasoned cases are to the effect that in actions between a husband and wife involving property rights the rule excluding relevant conversations between them in the absence of third persons as confidential communications yields to the necessity of the situation for the prevention of injustice and they are competent witnesses respecting such conversations." Brooks v. Brooks, 357 Mo. 343, 208 S.W.2d 279, 282–283[1, 2], 4 A.L.R.2d 826. State ex rel. Boswell v. Curtis, Mo.App., 334 S.W.2d 757, 763 [21], citing Brooks and other authorities, has this to say: "The only other strict privilege which the wife might assert would be upon the ground of confidential communication. But communications between husband and wife as to transaction of purely business matters are often not privileged as marital confidences. And it is the burden of the person asserting the privilege to show the circumstances which bring him under it." The objection on the ground of privilege is denied.

In support of her contention that the testimony objected to was inadmissible as a conclusion, the defendant cites: Ellis v. Brand, 176 Mo.App. 383, 158 S.W. 705; Anderson v. Asphalt Distributing Co., Mo., 55 S.W.2d 688, 86 A.L.R. 1033; Haddow v. St. Louis Public Service Co., Mo.App., 38 S.W.2d 284; and Miller v. John Hancock Mut. Life. Ins. Co., Mo.App., 155 S.W.2d 324. The Ellis case which is chiefly relied on held that the testimony of one defendant that his arrangement with the other defendant [176 Mo.App. 383, 158 S.W. 707] "was a partnership business" was a conclusion without probative effect as to the other defendant, the alleged copartner. In this, as well as the other cases cited, the testimony involved did not have the standing of an admission against the interest of the party testifying as in the case at bar. The defendant asserts that "the testimony was in the nature not only of a conclusion of the witness but was a legal conclusion as well." On the other hand, the plaintiff contends that the defendant's statement was not a mere opinion or conclusion of the witness but was factual testimony within the knowledge of the witness.

■ Not all conclusions and opinions of laymen are inadmissible. Dickerson v. Terminal R. R. Ass'n of St. Louis, Mo., 284 S.W.2d 568, 572[8]. The defendant's testimonial statement that she and Mr. Vick had a verbal agreement to divide the proceeds of the notes equally was an admission against her interest regarding an ultimate fact within her knowledge and as such was properly admitted in evidence. Nolan v. Joplin Transfer & Storage Co., 239 Mo.App. 915, 203 S.W.2d 740, 744[8]; Porter v. Withers Estate Co., 201 Mo.App. 27, 210 S.W. 109, 113[9]; 32 C.J.S. Evidence § 465, p. 105. See also Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618, 620–621[2]; Friedman v. United Rys. Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074, 1076[5]; Hanser v. Lerner, Mo.App., 153 S.W.2d 806, 812[6]; and Mayhew v. Travelers Protective Ass'n, Mo.App., 52 S.W.2d 29, 31[2, 3].

■ Apart from the defendant's admission of a verbal agreement, there is substantial evidence that Louis Vick was entitled to one-half of the proceeds of the notes. The parties owned the real estate

as tenants by the entireties and upon its sale the secured notes were made payable to Louis and Mary jointly. Both endorsed the notes and the collector Harold Roberts remitted the proceeds of the monthly notes to Louis and Mary in equal parts. This continued for approximately seven years and, since the record shows no objection on the defendant's part, we must assume it was with her consent and by agreement of the parties. After the remaining notes were paid in July 1955, the defendant continued for approximately three years to send Louis payments each month the same as if the notes were still outstanding and being retired monthly. The defendant's conduct over a period of about eight years constitutes an admission that Louis Vick was entitled to one-half the proceeds of the notes. In 31 C.J.S. Evidence § 291, p. 1050, we find this statement: "Where a party on the trial of an action advances contentions which are inconsistent with his prior conduct with relation to the matter in controversy, such prior conduct may be shown as being in the nature of an admission." This statement of the law is supported by the Missouri cases of Reiling v. Russell, 345 Mo. 517, 134 S.W.2d 33, 36[3, 4], and Rice v. Jefferson City Bridge and Transit Co., Mo., 216 S.W. 746, 752[8].

Furthermore, since the real estate was held by the entirety, the joint notes given to secure the remainder of the purchase price likewise constituted an estate by the entirety, and such estate attached to the proceeds when the notes were paid off in July 1955. Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55, 59[10]. When Louis and Mary were divorced in 1956, the estate by the entirety in the proceeds of the notes was converted into a tenancy in common and each of them was vested with an undivided one-half interest since there is no proof to the contrary. As stated in Cisel v. Cisel, 352 Mo. 1097, 180 S.W.2d 748, 750[2]: "Here, whether or not she furnished the purchase money, the wife freely consented and intended when she purchased the property that title be taken in the names of her husband and herself with full knowledge of the effect of such a deed. Thereby a tenancy by the entirety was created which was later converted to a tenancy in common by the divorce decree." See also Hernandez v. Prieto, 349 Mo. 658, 162 S.W.2d 829.

The defendant's deposition, read into evidence by the plaintiff, contained statements by the defendant such as: "I don't think he has anything coming" because "we borrowed money in order to pay $38,000 down on the deal. I borrowed $25,000" and "the way I feel" there isn't anything due Mr. Vick. The defendant contends that the plaintiff was "bound by the testimony, particularly when there was no other testimony offered with reference to the issue involved." For all that appears in the record, the defendant's feeling may have been based upon ethical rather than legal grounds. This testimony is much too vague and uncertain to overcome the definite and positive testimony that the parties had agreed to share equally in the property and its proceeds. The defendant's contention also overlooks the fact that regardless of who furnished the purchase price the property was taken and held as an estate by the entirety and was subject to the usual incidents when the parties were divorced absent proof of an agreement to the contrary. Cisel v. Cisel, supra.

We have examined all of the defendant's assignments of error and find them to be without merit. Our review of the case upon both the law and the evidence reveals no basis for setting the judgment aside. Section 510.310, subd. 4 RSMo 1949, V.A.M.S. Accordingly the judgment is affirmed.

All concur.