**A. C. BURGER, Plaintiff-Appellant,**

v.

**M. R. CROCKER and Velma Crocker, Defendants-Respondents.**

No. 31837.

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

Rehearing Denied July 13, 1965.

Buckley & Campbell, Robert Lee Campbell, St. Louis, for plaintiff-appellant.

McDonald, Wright & Bryan, Thomas F. McDonald and Raymond F. McNally, Jr., St. Louis, for defendants-respondents.

BRADY, Commissioner.

The appellant instituted this action against the respondents for the collection of three promissory notes in the aggregate principal sum of $5,661.34, plus interest, attorney fees and costs. A jury trial resulted in a verdict for the respondents and this appeal follows the overruling of appellant's timely after-trial motions. The parties will hereinafter be referred to by their designation in the trial court.

A brief résumé of defendants' answer is necessary herein. The defendants admitted they executed the notes and that payment had not been made. They also pled failure of consideration. By other allegations in their answers the defendants alleged that Mr. Crocker had committed perjury at the "instigation and request of plaintiff;" that when Crocker was convicted of this offense plaintiff told him that his attorney's fees and other expenses during his imprisonment would be taken care of by the plaintiff, who would also take care of all other expenses that would need to be met by either Crocker or his wife while Crocker was in prison; and that these notes were executed for the sole purpose of furnishing plaintiff with evidence to present to the United States Government in the event of inquiry by any agency thereof.

The facts, stated in the light required of this court by the jury's verdict, follow. Mr. Crocker was the general manager and vice-president of Community Motors, Inc., a corporation controlled by the plaintiff. During the years following the end of World War II and while price controls were in effect upon automobiles, Community Motors sold automobiles for prices in excess of the ceiling price. Crocker, pursuant to a general policy set by plaintiff, determined the amount of overage to be paid in cash and collected it, keeping 10% of the overage for himself and turning the other 90% over to the plaintiff. When agents from the Bureau of Internal Revenue of the federal government began an investigation of Community Motors Crocker was asked to give a formal statement. Before going to a meeting with agents of the Internal Revenue, he informed plaintiff of the meeting. Plaintiff gave him instructions as to what to say and also told Crocker that he would " * * * take care of everything." During the course of this meeting Crocker gave a sworn statement denying the practice of collecting a cash overage. He was later indicted on a charge of perjury arising out of this denial and upon a plea of guilty was sentenced to eighteen months in a federal prison. In the meantime plaintiff had been indicted in two cases of tax fraud. In one of these indictments Crocker was a co-defendant.

The night before Crocker was to leave for prison plaintiff came to the Crocker home and urged Crocker not to change his admittedly perjured statement. In plaintiff's presence Crocker signed five promissory notes in blank and gave them to his wife. This arrangement resulted from Crocker's statement that he was going to need money for his insurance payments. Plaintiff then told Crocker that " * * * if the wife needed any money to send them in and he would deposit the money to her account." Crocker's testimony was that the plaintiff told him the purpose of the notes was to constitute evidence " * * * that he wasn't paying me off to take the rap on the deal," in case the Internal Revenue Agents were to check on it.

A few days after Crocker departed for prison, his bank called his wife and informed her their account was overdrawn. She called the plaintiff's comptroller. The plaintiff personally met her at the bank where he deposited a check for $2,250.00 in her husband's account and instructed her to open her own account into which he deposited $250.00. Mrs. Crocker had power of attorney enabling her to draw checks on her husband's account. These two deposits accounted for the first note in the amount of $2,500.00 which plaintiff seeks to collect. Thereafter Mrs. Crocker called the plaintiff's comptroller whenever her account was overdrawn. As a result of these calls the plaintiff deposited $250.00 in her account on July 18, 1956, $50.00 on July 23, $25.00 on July 30, and $25.00 on August 1st. In December of that year she went to the plaintiff's office where she received plaintiff's check for $500.00. These sums account for the second note in the amount of $850.00. The third note sued on was for $2,311.34 and represents fees and expenses paid to attorney George C. Dyer in connection with his attendance at a hearing in Washington, D. C., regarding a parole for Crocker. This

sum was also paid to the defendants by the plaintiff.

All the parties involved in this action were represented by Mr. Dyer whose deposition was read into evidence. Plaintiff made specific and vigorous objection to reading that portion of Dyer's deposition wherein he testified that, having in mind the possibility of a "conspiracy indictment" also being returned against these parties, he asked the plaintiff, "How are you handling these payments that you are making to Crocker. * * *" Dyer's testimony was that plaintiff replied "Oh, I have some notes and other papers to show to the government or the agents, if they inquire about it." Plaintiff's objection was based on the ground that the conversation between Dyer and the plaintiff was privileged. The objection was overruled and the foregoing portion of the deposition was read at the trial. This conversation took place in July of 1956, and Dyer and the plaintiff were the only ones present. Mr. Dyer subsequently withdrew as attorney for either of these parties.

The first demand for payment of these notes came three days after the plaintiff had been sentenced for income tax fraud as a result of a trial at which Crocker changed his admittedly perjured statement and appeared as a witness for the prosecution.

The defendants submitted their case to the jury by Instruction No. 4 which hypothesized Crocker's conviction for perjury; the subornation of that perjury by the plaintiff; the plaintiff's promise to pay Crocker's attorney's fees and other trial expenses as well as his promise to pay all other expenses Crocker or his wife might incur while Crocker was in prison; and that these notes were only to be used in the event of an inquiry by any agency of the government as to the reason plaintiff was paying the defendants' expenses during Crocker's imprisonment.

The plaintiff has briefed these allegations of prejudicial error. He contends he was entitled to a directed verdict; that the trial court should not have overruled his objection to the reading of that part of Mr. Dyer's deposition set out herein; and in the giving of Instruction No. 4.

■ The plaintiff candidly admits the evidence clearly establishes the nature of the agreement between the plaintiff and Crocker. He urges that the defendant, having the burden of proof, cannot advance that defense and therefore plaintiff's case stands uncontradicted entitling him to a directed verdict. Plaintiff's reasoning would have us ignore that these parties are in pari delicto and that the contract between them is one which involves an illegal act or which is void as against public policy. A court will not aid either party to enforce such an agreement nor assist them in any attempt to seek relief to a transaction growing out of such agreement. As stated in 17 C.J.S. Contracts § 272, p. 1188: "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims, Ex dolo malo non oritur actio, and In pari delicto potior est conditio defendentis. The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them." Thus it is that "As between the immediate parties or their privies, a bill or note founded on an illegal consideration, or executed as a means of carrying out an illegal contract or transaction, is void and unenforceable. * * *" 10 C.J.S. Bills and Notes, § 154a, page 628. See Duncan v. Black, Mo.App., 324 S.W.2d 483, 1. c. [5], p. 487. Subornation of perjury is expressly made a crime by the provisions of Section 557.040, RSMo 1959, V.A.M.S. Thus in Rainer v. Western Union Telegraph Co., Mo.App., 91 S.W.2d 202, 1. c. 205, the court quoted with approval the following excerpt from Ward v. Hartley, 178 Mo. 135, 77 S.W. 302: " * * * And so it is with a contract void because contrary to public policy, whichever party comes into

court relying on it will be turned out and not only will he be turned out when he comes seeking to enforce a contract contrary to public policy, but when he comes, either as plaintiff or defendant, seeking relief touching past transactions growing out of such a contract, the court will not listen to him.

The court has no more regard for the man who comes seeking to recover what he voluntarily laid out in furtherance of an unlawful project than it has for one who seeks to enforce an unlawful contract. Courts prefer to have nothing to do with transactions growing out of such contracts, and to leave parties just where their own voluntary acts in such cases have placed them. Tyler v. Larimore, 19 Mo.App. [445] 458; Attaway v. [Third Nat.] Bank, 15 Mo.App. 578; Green v. Corrigan, 87 Mo. 359."

But the plaintiff insists that we must disregard so salutary a rule and deny its application to the instant case because the defendant had the burden of proof and cannot bear that burden since he is not allowed to rely upon the nature of the contract between Crocker and the plaintiff. In Todd v. Ferguson, 161 Mo.App., 624, 144 S.W. 158, 1. c. 160, the court disposed of this contention stating: "The law will not allow any one to found a legal right on a transaction so immoral, nor will it permit you to hide behind a rule of practice and receive reward from your fraud on the technical ground that you made out a prima facie case without being compelled to exhibit your own wrong." The opinion quotes at length from Bugg v. Towner, 41 Georgia 316, 1. c. 318, wherein Lord Mansfield in Holman v. Johnson, Cowper, 343, is cited as having stated the complete answer to plaintiff's contention. It is that the rule that a court will not lend its aid to either party to such an agreement is not made for the benefit of either party (here the plaintiff) but for the benefit of the ideal of justice and the public policy. This court will no more assist the plaintiff to recover upon these notes which grew out of an agreement to commit a crime as well as an agreement which was void as against public policy than it will assist the defendant to deny recovery on that basis. We will hear neither the plaintiff nor the defendant. There is no justice to either claim for both voluntarily entered upon such a course of action. We will leave these parties where they were when they entered the courtroom.

As might be expected the issue of whether the plaintiff did in fact instigate, request and pay Crocker to commit perjury was hotly contested. It is in this context that plaintiff urges the court prejudicially erred in overruling his objection to reading that portion of Mr. Dyer's deposition as set out herein. Plaintiff contends this evidence went solely and directly to the issue of plaintiff's subornation of Crocker's perjury. It is not clear that this evidence does so. The plaintiff's statement that he had some notes and other papers to show the government if they inquire about it could well have been made absent any evidence of the agreement between plaintiff and Crocker. However, assuming arguendo that this evidence went to that issue, the trial court did not prejudicially err in permitting that part of the deposition to be read. At the time plaintiff made this statement he was under two indictments for tax fraud arising out of these overage payments. Crocker had then given a perjured statement at plaintiff's instigation and request. If the plaintiff was to avoid conviction under the indictments, it was vitally important for Crocker to maintain the truth of his perjured statement. The plaintiff had been to Crocker and urged him not to change his story. When considered in the light of the whole evidence in this case, plaintiff's statement to Mr. Dyer was an admission that plaintiff intended to commit yet another crime, i. e., use these notes to cover up his continued subornation of Crocker's perjury and, in fact, to insure that Crocker gave perjured testimony at the plaintiff's trial.

Sec. 491.060, (3), RSMo 1959, V.A.M.S., deals with the attorney-client privilege and, in Gebhardt v. United Rys. of St. Louis, Mo., 220 S.W. 677, 1. c. 679,

was held to constitute a declaration of the common law. The court held: " * * * neither under our statute, R.S.Mo.1909, § 6362, nor at common law, of which said statute is simply declaratory, can a person employ an attorney for the purpose of aiding and abetting him in the commission of a future crime or fraud, and thereby seal the lips of his lawyer to secrecy and thus prevent the exposure or detection of such crime or fraud. The privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society. The law does not make a law office a nest of vipers in which to hatch out frauds and perjuries. This case was first set for trial on the 20th of October, 1914, and it was not only the right, but it was the duty, of Attorney Fensky, when he found, upon examining his client before the trial, that the case had no foundation in fact and could not be successfully maintained without perjury, to at once withdraw from the case, as he did, and to prevent the consummation of the contemplated crime and fraud by testifying to the facts as related to him by the plaintiff. Such communication was not privileged. It is unnecessary to add anything to what has been so forcibly said on this subject by Judge Ellison in Hamil & Co. v. England, 50 Mo.App. 338, and by Judge Gantt in State v. Faulkner, 175 Mo. 546, 75 S.W. 116, and State v. Lehman, 175 Mo. 619, 75 S.W. 139." It is to be noted that subsequent to the conversation between the plaintiff and his attorney, Mr. Dyer withdrew completely from representation of any of the parties in any of the facets of this case. In view of the fact that, considered within the fabric of this case, the plaintiff's statement constituted a brazen declaration of an intent to commit a crime in the future, Mr. Dyer's action was understandable. The statement objected to was not a privileged communication and the trial court correctly overruled the objection.

The plaintiff's contentions with regard to Instruction No. 4 are without merit and can be quickly disposed of. Two attacks are briefed and presented to sustain the plaintiff's contention that the giving of Instruction No. 4 constituted reversible error. The plaintiff first contends the instruction is fatally deficient in that it failed to require a finding the funds received in return for the notes were for expenses incurred by Crocker due to his trial and conviction. The defendants' amended answer was not limited to alleging the plaintiff agreed to pay only the expenses incurred by Crocker arising from his trial and conviction. That answer went on to allege that the plaintiff also agreed that he would pay " * * * all other expenses that would need to be met by either of the defendants while the said M. R. Crocker was in prison * * *." Instruction No. 4 submitted these allegations of defendants' answer in identical language requiring the jury to find " * * * and that prior to said defendant's departure for prison, plaintiff had told him in substance that he would pay all attorneys' fees and other expenses incurred by the trial and conviction of said M. R. Crocker, as well as all other expenses that would need to be met by either of the defendants while the said M. R. Crocker was in prison * * *."

The plaintiff then contends that the instruction was erroneously given as it " * * * failed to conform to defendants' evidence that the purported agreement between plaintiff and defendants was made at the inception of the investigation by the Internal Revenue Service." The simple answer is that this was not the defendants' evidence. Crocker testified that when he informed plaintiff he was going to the Internal Revenue Office where he would be questioned, plaintiff told him what to say and that he would take care of any expenses Crocker had "pertaining to the case." However, when plaintiff came to the Crocker home the night before Crocker was to leave for prison, it was obvious that to limit plaintiff's payments to those pertaining to

the case was not going to be of much benefit to Crocker. Crocker informed the plaintiff of his need for money to pay his insurance policies and the second agreement was made. Under its provision the plaintiff arranged for the subterfuge of the notes which were to cover that need and any money his wife might need. The plaintiff's contention is without merit.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

WOLFE, P. J., ANDERSON, J., and WOODSON OLDHAM, Special Judge, concur.

RUDDY, J., not participating.