**STATE of Missouri, Respondent,**

v.

**Kenneth Wayne HEISTAND, Appellant.**

No. 67338.

Supreme Court of Missouri,
En Banc.

April 15, 1986.

Rehearing Denied May 13, 1986.

C.J. Larkin, Michael R. Radosevich, Columbia, for appellant.

William L. Webster, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of first degree robbery, § 569.020, RSMo 1978, and second degree assault, § 565.060, RSMo 1978, receiving consecutive sentences of life imprisonment and 10 years as a persistent offender.

■ The case is here at the request of all of the judges of the Missouri Court of Appeals, Southern District, because a letter from the defendant to his wife was received in evidence, over the objection that it was a privileged communication. They ask us to take the case before opinion to resolve this issue. We have agreed to do so, and now retransfer the case by reason of our conclusion that the marital privilege does not render the letter inadmissible.

The defendant's wife did not testify. She had her own legal involvements, and turned the letter over to a probation officer in Arizona. A handwriting expert testified that it is in the defendant's handwriting. We quote the important parts of the letter, as follows: [1]

                              August 3

Hi Missy

How are you baby? i hope just fine. Im doing alright thanks to you & nobody but you. ... I can beat this armed robbery if Jack will say i was working on some equipment during the evenings of the 1st wk of January 1981, especially Jan 5th & 6th from 5 pm to 9:00 pm; Call him & talk to him for me, tell him we'll pay him everything i owe him. try to get him to be my alibi, tell him Im facing 2 life sentences from something that happened in 81, if you cant talk any sence into him then say well if you wont help him just because of me fucking up that roller, it was an accident, & I could of done lotz

---

1. The omissions are of portions of the letter blocked out by the trial court.

The dissent is flatly wrong in asserting that the entire text of the letter was received in evidence. Portions not relating to the solicitation of the alibi witness were masked.

better but Danny & everyone else fucked me up by not working etc.

Tammy i think you can get Jack to help me, all hes got to say is i worked, also he was there to lock up shop everynight & he was there when Candy picked me up at 900 pm, if Jack wont do this for me just tell him, that if he dont help me that i got goods on him, ...

\*      \*      \*      \*      \*      \*

Love always
Your loving husband
Kenny Heistand

Burn this letter

The letter clearly suggests that the defendant's wife should procure one "Jack" to commit perjury at the defendant's trial, so as to provide an alibi. Subornation of perjury is a felony both in Missouri[2] and in Arizona.[3] The defendant also enlists his wife as a co-conspirator in the subornation enterprise. We believe that, as a matter of public policy, the husband-wife privilege should not apply to communications relating to contemplated future crime. An analogy is found in holdings that the attorney-client privilege does not so extend.[4] The public interest in preventing crime far outweighs the possible harm to the marital relationship.

The dissent points out that the marital privilege emanates from a statute, § 546.-260, RSMo 1978, there quoted, and argues that this statute should be subject only to such exceptions as the legislature chooses to enact. The courts; however, have not applied this statute and its civil counterpart, § 491.020, RSMo 1978, in absolute terms, but rather have created a number of exceptions based on good cause and public policy, in the conviction that the legislature did not intend absolute reading.[5] The most recent case is *T.C.H. v. K.M.H.*, 693 S.W.2d 802 (Mo. banc 1985), holding that one spouse may testify as to statements by the other which have a bearing on fitness to have custody of children. The attorney-client privilege is also codified in Missouri, § 491.060, RSMo 1978, but our courts recognize the exception discussed in footnote 4. A similar exception should be recognized here.[6]

There is another reason why the privilege does not apply. The defendant did not intend for his wife to preserve the information communicated in confidence. He wanted her to make it known to Jack, and to solicit his activity. The privilege is designed to cover only subject matter which is intended to remain within the marital community. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed.

**2.** Section 575.270.1, RSMo Cum.Supp.1984.

**3.** Ariz.Rev.Stat. § 13–2804, 1978.

**4.** *Burger v. Crocker*, 392 S.W.2d 640, 645 (Mo. App.1965); *Jafarian-Kerman v. Jafarian-Kerman*, 424 S.W.2d 333, 338 (Mo.App.1967); *United States v. Calvert*, 523 F.2d 895, 909 (8th Cir.1975) *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir.1984).

**5.** *State v. Brydon*, 626 S.W.2d 443, 453 (Mo.App. 1981) and *State v. Kollenborn*, 304 S.W.2d 855, 864 (Mo.banc 1957) (a wife is a competent witness against her husband in a prosecution for acts constituting a crime of personal violence against her child. This exception arises from the common-law exception permitting the wife to testify against the husband in case of her own injury by the husband.); *State v. Applegate*, 668 S.W.2d 624 (Mo.App.1984) (threats of violence by one spouse against another are not confiden-

tial communications within the meaning of § 546.260.); *Durr v. Vick*, 345 S.W.2d 165 (Mo. 1961) (communications between husband and wife involving purely business matters are not confidential); *Henry v. Sneed*, 90 Mo. 407, 12 S.W. 663 (1889) (testimony concerning otherwise confidential communication between husband and wife was held admissible because the court felt that the testimony was necessary to prevent fraud); and *Darrier v. Darrier*, 58 Mo. 222 (1874) (a letter was held not privileged as a confidential communication because of the existence of an agency relationship between the spouses).

**6.** Curious indeed is the proposition advanced in the dissent, that exceptions may be implied in a statute which speaks in absolute terms, so long as the exceptions are based on the preexisting case law. From a strictly logical standpoint it is more difficult to support an exception knowable to the legislature which passes the statute than one which had not been previously considered by the courts.

435 (1954). Inasmuch as the portions of the letter received in evidence contain no confidences, the direction to burn the letter does not stand in the way of admissibility.

It is not necessary to resolve the factual issue as to whether the communication was mailed by the defendant from a jail, so that he could reasonably expect that it would be opened and read by a censor. Nor do we have to consider the tangential questions posed in the dissent, such as whether the recipient spouse may deprive the sending spouse of the privilege by revealing a confidential communication to a third person.

The case is retransferred to the Court of Appeals, Southern District, for further proceedings consistent with this opinion.

HIGGINS, C.J., BILLINGS and RENDLEN, JJ., and MANFORD, Special Judge, concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate dissenting opinion of DONNELLY, J.

ROBERTSON, J., not sitting.

1. In *State v. Brydon*, 626 S.W.2d 443 (Mo.App. 1981), the wife made statements in the presence of authorities and her husband, which were held to be tacit admissions by the husband of his sexual abuse of his foster daughter. They were admitted into evidence through the testimony of the authorities. In rejecting the husband's argument that the wife's extra-judicial statements were not admissible under § 546.-260, the court stated:

> Even at common law, however, the incompetency did not appertain to prevent testimony of the wife against the husband for injury done or threatened to her person. * * * *That exception to the common law rule * * * was unaffected by the statute and survives.* * * * The courts continue to receive the testimony of a wife to prosecute a husband not only for injury to the spouse but also for injury to a child or step-child on the rationale * * * that a crime against the child of the family is equivalent to a crime against the spouse.

626 S.W.2d at 452–453. (Citations *to State v. Kollenborn*, 304 S.W.2d 855 (Mo.banc 1957) omitted.) (Emphasis added.)

The above quote serves to place *State v. Kollenborn, supra*, in proper perspective as well. For clarity's sake, the following excerpt from *Kollenborn* is noteworthy:

> But we also see that centuries ago, and almost contemporaneously with the rule itself, an

DONNELLY, Judge, dissenting.

The principal opinion holds, *as a matter of public policy*, that communications between spouses "relating" to future crimes are not privileged. It erroneously treats the issue raised in this case as if it involved the common law disregarding the fact that the privilege *asserted in this case* is statutory. § 546.260, RSMo 1978.

Astonishingly, the principal opinion attempts to justify its action by presuming that this Court may abrogate statutory enactments whenever a majority deems it good public policy. The principal opinion fails, however, to adduce any authority for its arrogation. The cases cited in footnote five of the principal opinion are said to show that the courts "have *created* a number of exceptions based on good cause and public policy, in the conviction that the legislature did not intend an absolute reading." However, none of those cases "created" an exception. Rather, in each of the cited cases the issue was whether the statute embodied certain exceptions *already recognized at common law.*[1] These were

> exception developed. This exception has been variously defined * * * but its substance was that a wife or husband would be, and was, permitted to testify against the other spouse where the latter had committed or attempted an assault or other act of violence upon the proffered witness * * *. *This doctrine was declared in Missouri prior to the enactment of any statutes on the general subject.*

304 S.W.2d at 860–861. (Emphasis added.)

Noting the lack of uniformity at common law, the *Kollenborn* Court *interpreted* the common law exception incorporated into § 546.260 to include violence against a spouse's child *as equivalent to violence against the spouse.*

*State v. Applegate*, 668 S.W.2d 624 (Mo.App. 1984) merely applied the exception recognized in *Kollenborn. See,* 668 S.W.2d at 635.

*Durr v. Vick*, 345 S.W.2d 165 (Mo.1961), holding that communications between husband and wife concerning business matters are not privileged, involved the interpretation of § 491.020, RSMo 1949, and not the statute here at issue. Furthermore, the "exception" noted in that case existed at common law. *See Brooks v. Brooks*, 357 Mo. 343, 208 S.W.2d 279, 283 (Mo.1948), quoted in *Durr.*

In *Henry v. Sneed*, 90 Mo. 407, 12 S.W. 663 (1889), the husband and wife joined as plaintiffs in a civil action charging fraud against third

plainly cases of statutory *interpretation,* on the basis that § 546.260 incorporates only those exceptions existing at common law prior to 1879, when what is now § 546.260 was first enacted (§ 1918, ch. 24, RSMo 1879). *See, Kollenborn,* 304 S.W.2d at 859–862. In the present case there is no room for interpretation because at common law there was no exception like that decreed today. Furthermore, the statute's plain language mandates that, *in no case,* will confidential spousal communications be admissible.

Section 546.260 provides:

No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife.

Appellant argues that he did not exercise his "option" in favor of having his wife testify and that in any event the letter constitutes a "confidential communication" the admission of which is absolutely barred by the statute.

The first issue, then, is whether the State's admission of this letter, through the testimony of witnesses *other than appellant's wife,* is in the nature of spousal testimony and, thus, within the privilege. The few Missouri cases on the subject hold that an interspousal letter loses its privileged character on coming into the hands of a third person *unless* it was obtained by the third person through the agency or connivance of the addressee spouse. *State v. St. John,* 94 Mo.App. 229, 68 S.W. 374 (1902), *Mahner v. Linck,* 70 Mo.App. 380 (1897).

In *St. John* the defendant was prosecuted for living in an open and notorious illicit relationship with a woman he purported to have married in Missouri. The State contended that the defendant was already married to a woman in Utah. To establish this, the State introduced a photo of the defendant allegedly sent by him to the woman in Utah with the following note on the back: "To My Beloved Affectionate and Lawful Wife, Nell, August 16, 1896." The court held that the then existing statutory privilege, Rev.St. 1899, § 2637 (identical to § 546.260), precluded admission of the photo. The photo "was produced in evidence by a witness *who had received it from the woman in Utah charged to be the wife of defendant.*" 68 S.W. at 375. (Emphasis added.)

*Mahner v. Linck, supra,* was an appeal from the denial of a plea in abatement of an attachment. Attempting to establish that the defendant-debtor had appointed his wife as his agent to manage his business in his absence, the plaintiff-creditor "produced * * * and read in evidence, over the objections of the [defendant-creditor's] counsel," a letter written by defendant to

parties. The court upheld the testimony of both regarding interspousal conversations which the court held were "part of the *res gestae* and on the foot of the fraud." 12 S.W. at 665. The privilege did not apply because, "*[a]t common law* parties to the record were admitted as witnesses, as a marked exception to the general rule, where fraud was charged * * *." *Id.* (Emphasis added.)

Finally, the principal opinion cites *Darrier v. Darrier,* 58 Mo. 222 (1874), but this case too is to no avail since *Darrier* was *decided before there was even a statute.*

None of these cases is authority for the proposition that this Court may create a new exception unknown at common law and flatly contrary to the express statutory language.

his wife on the day he left town. The court held as follows:

> We think the policy of the law will be best subserved, by refusing to admit written communications of this character, *whenever they come to the possession of a third party by the agency of the husband or the wife,* or where such third party, has gained possession of them by reason of his representative character, his agency or other fiduciary relation to the husband or wife. *The letter in this case should not be admitted, unless it is first shown that the plaintiff did not get possession of it through the agency or connivance of the wife.*

70 Mo.App. at 388. Cases from other jurisdictions which apply a similar rule are compiled in Annot., 3 A.L.R. 4th 1104, at 1111. Other cases go further and hold that no matter how third persons come to possess the letters, they are privileged. *Bowman v. Patrick,* 32 Fed. 368 (C.C.E.D.Mo.1887). *See also,* cases cited in Annot., 32 A.L.R. 4th, 1177 at 1180. These courts reason that the privilege attaches to the communication and not merely to the addressee spouse. On the other hand, there are cases holding inter-spousal letters admissible regardless of the cooperation of the defendant's spouse in delivering the communication to the prosecutor or prosecuting witness. *McNeill v. State,* 117 Ark. 8, 173 S.W. 826 (1915), *State v. Buffington,* 20 Kan. 599 (1878) (*but, see State v. Myers,* 230 Kan. 697, 640 P.2d 1245 (1982), which distinguishes between letters obtained by third persons inadvertently and those obtained by the consent or connivance of the addressee spouse.)

The authorities are quite mixed in their treatment of the issue. The majority, however, seem to apply some limitation to the admission of confidential letters obtained through the agency or connivance of the addressee spouse. *See generally,* Annot., 3 A.L.R. 4th 1104, Annot., 32 A.L.R. 4th 1177. With this, the commentators agree.

In considering this question, Wigmore concludes:

> For *documents* of communication coming into the *possession of a third person,* a distinction should obtain * * *. That is, if they were obtained from the addressee spouse by voluntary delivery, they should still be privileged (for otherwise the privilege could by collusion be practically nullified for written communications); but if they were obtained surreptitiously or otherwise without the addressee's consent, the privilege should cease.

8 Wigmore, Evidence § 2339 (McNaughton rev. 1961).

McCormick states as follows:

> The weight of the decisions seems to support the view that the privilege does not protect against the testimony of third persons * * * who have secured possession or learned the contents of a letter from one spouse to another * * *. There is *one important qualification* which many if not most cases announce, namely *that the privilege will not be lost if * * * the delivery or disclosure of the letter be due to the betrayal or connivance of the spouse to whom the message is directed.* Just as that spouse would not be permitted, against the will of the communicating spouse, to betray the confidence by testifying in court to the message, so he or she may not effectively destroy the privilege by out of court betrayal. (Emphasis added.)

McCormick on Evidence § 82 (3rd Ed.1984).

Section 546.260, as interpreted in *St. John* and *Mahner,* is consistent with the weight of authority and the view of the learned commentators. Thus, letters between spouses introduced by a third person, who obtained them through the agency or connivance of the receiving spouse, are in the nature of spousal *testimony* and thus inadmissible under § 546.260.

Insofar as the letter in this case was obtained through the agency and connivance of appellant's wife, who turned it over to her probation officer, it is in the nature of spousal testimony under our statute. According to the plain language of § 546.260, this "testimony" may be re-

ceived only "at the option of the defendant." Furthermore, the refusal to exercise this option normally privileges *all* spousal testimony "and is not restricted to confidential marital communications." *State v. Lowe,* 647 S.W.2d 196, 198 (Mo.App.1983).

However, "since the privilege has as its only effect the suppression of relevant evidence, its scope should be confined as narrowly as is consistent with reasonable protection of marital communications." McCormick on Evidence § 82 (3rd Ed.1984). Thus, the holding in *Lowe, supra,* that once the defendant objects to his spouse's testimony, it is privileged whether confidential or not, should be "confined" to situations where the State seeks to put the spouse on the stand and *not* to the admission of *non-confidential* letters in the hands of a third party. If the letters *are* confidential, they are absolutely inadmissible under the last sentence of § 546.260.

The *testimonial* privilege applied in *Lowe* strikes the proper balance between the exclusion of relevant evidence and the "public policy, exalting the importance of the maintenance of the marriage relation as one of sanctity to be preserved and removed from dissolution by reason of unnecessary discord as far as possible." *Dickinson v. Abernathy Furniture Co.,* 231 Mo.App. 303, 96 S.W.2d 1086, 1094 (1936). The danger to the marriage relationship is substantially greater when one spouse confronts the other on the witness stand than when a *non-confidential* letter is admitted into evidence through a third party. Hence, the balance shifts in favor of accepting such relevant probative evidence. Therefore, the privilege embodied in § 546.260 should not extend to *non-confidential letters* in the hands of third persons, regardless of whether they were obtained through the agency or connivance of the addressee spouse. Moreover, this qualification comports with the common law as noted in the previously cited authorities. 8 Wigmore, Evidence § 2336 ("The essence of the privilege is to protect confidences only."); McCormick, § 80 ("The communication must be confidential.").

It remains only to consider whether the letter at issue here was confidential. The gravamen of confidentiality is the *intent* of the communicator, *State v. Byrd,* 676 S.W.2d 494, 501 (Mo. banc 1984) (Privilege "depends upon the maker's intention that the communication be confidential * * *."), 8 Wigmore, Evidence § 2336 ("The purpose is to insure *subjectively* the unrestrained privacy of communication free from any fear of compulsory disclosure." (Emphasis added.))

The principal opinion concludes that the entire letter was not confidential because "portions of the letter * * * contained no confidences * * *." A detailed refutation of this argument is obviated by the principal opinion's inclusion of the entire text of the letter. Upon its face, there is no indication of intent that any "portion" of it be passed on. The principal opinion conveniently confuses *instructions to the wife* with an *"intended transmission* of the communication [the letter] to a third person." 8 Wigmore, Evidence, § 2336. (Emphasis in original.)

Here, the letter itself unequivocally evidences appellant's intent that it be confidential. He directed, in bold print, that it be burned. That he asked his wife to make *other* communications to a third person is not equivalent to an intention that the *letter itself* be passed on. The question here, as to the admissibility of this *letter,* is whether it was *intended* to be confidential. There is direct evidence of this intent. Furthermore, there was no *"intended transmission* of [*the letter*] to a third person." Had the letter or its substance in fact been transmitted to Jack, then, unquestionably, *Jack* could testify to the same. But that is essentially distinguishable from admitting into evidence the entire letter, which was obtained through the agency and connivance of appellant's wife.

There can be no doubt, upon this record, that the *letter* was, to quote the principal opinion, "intended to remain within the marital community." Accordingly, the letter should have been excluded as a confi-

dential spousal communication under § 546.260.

In my view, we ought to uphold the integrity of the law, as the legislature intended it, rather than strain to reach a particular result in this case.

I respectfully dissent.